IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *ex rel.* DANIEL MONTES, JR. and § <br> ELIZABETH H. HUDSON, § <br> § <br> **Plaintiffs-Relators,** § <br> § <br> v. § <br> § <br> MAIN BUILDING MAINTENANCE, § <br> INC., JXM, INC., ROBERT A. § <br> XIMENES, ELVIRA H. XIMENES, and § <br> MARGAUX I. XIMENES, § <br> § <br> **Defendants.** § | CIVIL ACTION NO. 5:16-CV-00523-JKP |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE COURT:

Defendants Main Building Maintenance, Inc. ("**MBM**"), JXM, Inc. ("**JXM**"), Robert A. Ximenes, Elvira H. Ximenes, and Margaux I. Ximenes (collectively, "**Defendants**") file this Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "**Motion**") and would respectfully show the following:

**I. INTRODUCTION**

1. Relators, both of whom are certified vexatious litigants,[1] brought this *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "**FCA**"). Relators' complaint is based on vague, general, and conclusory allegations that Defendants were accepted

---

[1] *See* ECF No. 39-1, pp. 3, 20-21, 25. Relator Daniel Montes is also barred from filing a lawsuit in the Austin Division of the Western District of Texas absent permission from a district or circuit court judge. *Id.* at p. 3. To the extent necessary, Defendants request that the Court take judicial notice of these orders. *See* Fed. R. Evid. 201; *see also U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 688 (W.D. Tex. 2006) (taking judicial notice of certain documents in considering motion to dismiss FCA claims under Rule 12(b)(6)).

into several programs with the Small Business Administration (the "**SBA**") by making fraudulent statements during the enrollment and yearly-reporting processes, and thereby procured certain unidentified maintenance, custodial, and construction contracts at U.S. military bases and with other government agencies (the "**Unidentified Government Contracts**"). *See* ECF No. 1.

2. To be clear, Relators are **not** claiming that Defendants overcharged for services actually provided under the Government Contracts, or that Defendants charged for services not performed. Instead, they claim that Defendants made the misrepresentations to the SBA, which then qualified Defendants for participation in certain programs whereby they became eligible to bid on and procure the Unidentified Government Contracts.

3. The Government has declined to intervene. ECF No. 24.

4. Filed in June 2016, the action would lay dormant for nearly three years before Relators sought service of the complaint. ECF No. 25. At no point have Relators either amended the complaint or sought leave to do so, the deadline for which passed on January 8, 2020. ECF No. 53 ¶4.

5. With the pleadings now closed, Defendants seek judgment on the pleadings as to Relators' causes of action under Rule 12(c) for the failure to state a claim.

6. To begin, it has been squarely held that "false claims" under the FCA do not include making false representations to the SBA to establish eligibility for its programs and then being paid for services actually rendered under contracts procured based on the SBA program eligibility.

7. Moreover, Relators have failed to comply with Rule 9(b), concerning the pleading of special matters including fraud, insofar as the complaint does not state with particularity the

circumstances constituting that alleged fraud. Instead, Relators describe certain false statements in the most general of terms and in a conclusory fashion.

8. Accordingly, the Court should grant this Motion and dismiss the claims with prejudice, as Relators have pleaded their "best case" and should not otherwise be allowed to conduct discovery to develop their factual allegations. Upon dismissal, the Court should allow Defendants leave to file a motion to support their request under Section 3730(d)(4) of the FCA, which grants attorney's fees and expenses to a prevailing defendant if the FCA action was clearly frivolous or vexatious or brought primarily for purposes of harassment.

## II. LEGAL STANDARDS

### A. Dismissal under Rule 12(c) for the failure to state a claim

9. Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c).

10. A Rule 12(c) motion for judgment on the pleadings is a procedural vehicle for raising a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted.[2] *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015) (citing Fed. R. Civ. P. 12(h)) ("[A] defense of failure to state a claim upon which relief can be granted may also be raised by a Rule 12(c) motion.").

11. A Rule 12(c) motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008). "Under a Rule 12(b)(6) analysis, a complaint must allege enough facts that, if taken as true, 'state a claim to relief that

---

[2] A party is not required to raise the failure-to-state-a-claim defense through a responsive pleading prior to filing a Rule 12(c) motion on that basis. *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015); *see also Obazee v. The Bank of New York Mellon*, No. 3:15-CV-1082-D, 2015 WL 4602971, at *1 (N.D. Tex. July 31, 2015).

is plausible on its face.'"  *Hansaworld USA, Inc. v. Carpenter*, 662 F. App'x 259, 261 (5th Cir. 2016) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations and unwarranted factual inferences are not accepted as true.  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

**B.  Failure to plead a fraud-based claim with particularity under Rule 9(b)**

12. A fraud-based cause of action may be dismissed on the pleadings for failure to state a claim if the alleged fraud is not pleaded with the requisite particularity.  *See Matassarin v. Grosvenor*, No. SA-13-CA-913-RP, 2015 WL 12734174, at *12 (W.D. Tex. Oct. 19, 2015) ("A dismissal for failure to state fraud with particularity is a 'dismissal on the pleadings for failure to state a claim.'" (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004))).

13. According to Rule 9(b), "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).

14. To satisfy Rule 9(b)'s "particularity" requirement, the complaint must set forth, at a minimum, the "who, what, when, where, and how" of the alleged fraud.  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).

**C.  FCA claims and particularity requirements**

15. It is well established that an FCA claim must meet Rule 9(b)'s pleading standard.  *See United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc*., No.

SA-17-CV-1249-XR, 2019 WL 5970283, at *3 (W.D. Tex. Nov. 13, 2019) (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009)).

16. The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented [to the United States], a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B).

17. The four elements of an FCA claim are as follows: (i) a false statement or fraudulent course of conduct; (ii) made or carried out with the requisite scienter; (iii) that was material; and (iv) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim). *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009).

18. The FCA does not create a cause of action for all fraudulent conduct affecting the government. *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 813 (E.D. Tex. 2008). Rather, the focus in an FCA suit "must be on the *false claim* itself." *Id*. (emphasis in original) ("Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation."). Importantly, there is no liability under the FCA for any alleged underlying fraudulent activity; only for a false claim for **payment**. *Id*.; *see also* 31 U.S.C. § 3729(b)(2)(A) (defining "claim" as a "request or demand, whether under a contract or otherwise, for money or property"). Whether a claim for payment is "false" depends on the contract, regulation, or statute that supposedly warrants it. *United States v. Southland Mgmt. Corp*., 326 F.3d 669, 674 (5th Cir. 2003).

19. To satisfy Rule 9(b) in the context of the FCA, a complaint must allege either (i) the details of an actually submitted false claim or (ii) particular details of a scheme to submit

5

false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. *United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2012 WL 12850250, at *3 (quoting *Grubbs*, 565 F.3d at 190) (quotations omitted); *see also Integra Med Analytics*, 2019 WL 5970283 at *3 (quoting *Grubbs*, 565 F.3d at 190) (quotations omitted).

20. By way of indicia of actual knowledge of the FCA-violating fraud, the relator must typically provide an actual description of the fraudulent claims and the bases behind them. *See United States ex. rel Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013) (per curiam). To support allegations of false records, the relator must point to specific instances of such records or statements. *See id.* at 895. Either way, the relator is not absolved of the burden of sufficiently pleading the time, place, or identity details of the traditional [Rule 9(b)] standard, in order to effectuate [its] function of fair notice and protection from frivolous suits." *Id*. (citing *Grubbs*, 565 F.3d at 190); *see also U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 688 (W.D. Tex. 2006) ("[A] complaint must specifically identify the ***actual fraudulent transactions*** and ***the exact way in which the fraud was committed***.") (emphasis added)).

### III.  ANALYSIS & ARGUMENT

#### A.  Relators fail to allege any qualifying "claims" under the FCA

21. The thrust of Relators' complaint is that Defendants made false representations to the SBA during the application, enrollment, and renewal process for certain SBA programs. These types of "claims" are not contemplated by or actionable under the FCA.

22. The facts in *United States ex rel. Guzder v. MKM Engineers, Inc.* are essentially identical to those at issue here. No. H-05-895, 2009 WL 10697670 (S.D. Tex. Mar. 3, 2009), *report and recommendation adopted by*, 2009 10697686 (S.D. Tex. Mar. 30, 2009). In *Guzder*,

the relators alleged that the defendant company fraudulently obtained millions of dollars in sole course, no-bid contracts with the federal government through participation in the SBA Section 8(a) Minority Set-Aside program. *Id.* at *2. According to the relators, the contracts should never have been awarded because the defendant was not eligible to participate in the SBA program. *Id.* The relators alleged that the activities giving rise to FCA violations generally consisted of, among other things, the following: (i) maintaining SBA-program eligibility despite that the net worth of the defendant's principal shareholder exceeded the statutory thresholds; (ii) submitting fraudulent eligibility certifications to the SBA for several years; (iii) fraudulently concealing or transferring personal assets of the principal shareholder for the purpose of maintaining the defendant's eligibility to participate in the SBA program; (iv) fraudulently creating and controlling related companies run by "straw man" family members in order to continue receiving benefits of the SBA program after "graduating" from that program; and (v) setting up and using separate operating divisions within the defendant company to enable fraudulent reporting to the SBA that the defendant complied with certain "competitive mix program" eligibility requirements. *Id.* at *7.

23. The defendant in *Guzder* filed a motion to dismiss contending that the FCA does not recognize a cause of action for fraudulent participation in SBA programs. *Id.* at *2.

24. The *Guzder* court agreed, stating that "'false claims' do not include making false representations to the SBA to establish eligibility under 8(a) and then submitting invoices for services rendered under improperly procured contracts." *See id.* at *7. In reaching this conclusion, the *Guzder* court analyzed the particulars of the SBA's regulatory scheme:

> The SBA regulations, which expressly address those contractors who would misrepresent their eligibility to participate in its program, are evidence that [the government's obligation] was not [conditioned on certification]. 13 C.F.R. §§ 124.303-.305. These regulations provide that the "SBA may terminate the

>   participation" in the program, but do not mandate a termination. *Id.* at § 124.303(a). Indeed, under the regulations, even terminated contractors are obligated to complete pending contracts. *See id.* at § 124.304(f).

*Guzder*, 2009 WL 10697670 at *9 (internal citations omitted and modified).

25.     The *Guzder* noted "that even if Defendants did commit fraud when they accepted contracts through the SBA [program], that fraud [did] not go to the government's obligation to pay for work actually performed under those agreements." *Id.*

26.     Here, the allegations of wrongdoing raised in the complaint are substantially similar to those in *Guzder*. The complaint is rife with allegations that Defendants submitted fraudulent statements in support of their eligibility for SBA programs directly to the SBA. *See, e.g.*, ECF No. 1 ¶¶59- 61, 64-65, 71-72.  The complaint alleges that Defendants created and controlled "shell" companies through "figurehead" family members in order to continue qualifying for SBA programs. *See, e.g.*, ECF No. 1 ¶¶48, 53, 59-65.  The complaint also alleges that Defendants used different operating names to make it appear as if they were different joint ventures for purposes of qualifying for Section 8(a)'s Mentor/Protégé program. *See, e.g.*, ECF No. 1 ¶¶64, 68.

27.     As in *Guzder*, Relators have not alleged that certification of compliance with SBA requirements was a condition for payment under the any of the Unidentified Government Contracts.  Nor do they allege that Defendants somehow lost certification in the midst of performing the Unidentified Government Contracts and were not obligated to continue performing the contracted services.  To the extent that certification of SBA-program eligibility was indeed required as a condition of payment, the complaint fails to specify with particularity which of the Unidentified Government Contracts were subject to that condition and the related circumstances.

28.     Indeed, cases more recent than *Guzder*, such as *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-CV-00015, 2017 WL 9478501 (E.D. Vir. April 4, 2017), have gone further in holding that there is no false representation of SBA eligibility status where an actual, certified SBA-program participant submits an invoice for payment on a contract procured through the SBA program. *See id.* at *14. As the *Thermcor* court notes:

> The 8(a) program is not self-governing. Participants do not decide when and if they are in violation of regulations, should be removed from the program, or not bid on contracts. Eligibility is closely monitored by the SBA, and disputes over continued eligibility are contested before that agency which is vested with discretion to resolve them.

*Id.* at *15.

29.     Thus, where the undisputed facts are that invoices for payment were made by an SBA-program participant, and its participation was never revoked, or early terminated, there can be no "false claim" under the FCA in connection with the invoice. *See id.*[3]

30.     Here, the allegedly fraudulent representations of program eligibility to the SBA were not "false claims" themselves because they certainly did not involve requests for payment. *See Bristol-Myers*, 587 F. Supp. 2d at 813; *see also* 31 U.S.C. § 3729(b)(2)(A). But neither were any requests for payments on the Unidentified Government Contracts. *See Thermcor*, 2017 WL 9478501 at *14-15. In fact, the very allegations of Relators' complaint are that the Unidentified Government Contracts were procured based on Defendants' status as certified, SBA-program participants. *See, e.g.*, ECF No. 1 at ¶¶57, 59, 70.

## B. The FCA claims are not pleaded with particularity

---

[3] To the extent that the *Guzder* court analyzed the conditioned-payment issues in terms of the FCA element of "materiality," *see Guzder*, 2009 WL 10697670 at *8, Relators have failed to sufficiently plead that element with particularity as well.

31.     Even if Relators' legal theory were actionable under the FCA, the complaint patently fails to comply with Rule 9(b)'s particularity requirements.

32.     The majority of the complaint merely recites regulations and standards for various SBA programs. *See* ECF No. 1 pp. 5-18. The factual allegations, in pages 18-26, describe the *general nature* of certain alleged false representations, but they fall far short of identifying the "who, what, when, where, and how" required under Rule 9(b). *See Thompson*, 125 F.3d at 903; *see also Williams*, 112 F.3d at 177-78.

33.     For example, Relators repeatedly allege that Defendants made fraudulent misrepresentations regarding their eligibility for certain SBA programs. *See* ECF No. 1 ¶¶60, 65, 71, 73, 74, 75, 76. But nowhere in the complaint do Relators identify: (a) the precise misrepresentation (instead, referring generally to "hundreds" and "thousands" of alleged misrepresentations, *see id.* ¶¶2, 73, 74, 77, 92, 95); (b) a single date of any such misrepresentations (instead, they provide general time frame over a nineteen-year period, *see id.* ¶¶60, 71, 73, 77, 80, 86, 91); (c) which Defendant made each of the misrepresentations (instead, they refer generally to "Defendants")[4]; or (d) the means by which the misrepresentation was made (instead, referring generally to enrollment and renewal process with the SBA, *see id.* ¶¶60, 61, 64, 69, 72). Relators repeatedly allege that JXM was a mere conduit of MBM, and that

---

[4] FCA pleadings "containing general allegations, which do not state with particularity what representations each defendant made do not meet the Rule 9(b) particularity requirement" because such pleadings do not "link each corporate entity to the scheme or schemes alleged." *see U.S. ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 546 (S.D. Tex. 2011), *order vacated in part on reconsideration,* No. CIV.A. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012); *see also U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008) (holding that district court did not abuse discretion in dismissing complaint where relators failed to plead the identity of any corporate actor with particularity beyond "defendants"); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (explaining that "[t]o state a case for fraud, however, requires a plaintiff to allege with particularity the defendant's acts which the plaintiff contends amount to fraud").

Margaux Ximenes did not actually control JXM. But Relators provide no factual basis to support these conclusory statements. *See Bristol-Myers*, 587 F.Supp.2d at 826-27 (dismissing FCA claims because conclusory allegations, without specific factual basis, calls for an "impermissible deduction of fact"). Such vague allegations are insufficient to pass muster under Rule 9(b). *See Tenet Healthcare*, 481 F. Supp. 2d at 688 (holding that FCA complaint failed to state a claim under Rule 12, finding that allegations that fraud occurred "at some point in the 1980s, between 1995 and 2002, and in 1999" were insufficiently broad to satisfy the "when" requirement, and stating that "a complaint must specifically identify the actual fraudulent transactions and ***the exact way in which the fraud was committed***") (emphasis added)).

34. Moreover, Relators' allegations are equally consistent with the conclusion that Defendants did *not* make any false misrepresentations. For example, Relators concede in their complaint, and indeed allege, that: (a) MBM was approved by the SBA for enrollment in the Section 8(a) program (ECF No. 1 ¶57); (b) MBM was approved by the SBA for enrollment in the Small Disadvantaged Business program (*id.*); (c) enrolled in these programs, MBM was eligible for certain government contracts (*id.* ¶57); (d) JXM was approved by the SBA for enrollment in the Section 8(a) program (*id.* ¶59); (e) JXM was approved by the SBA for enrollment in the Small Disadvantaged Business program (*id.*); (f) JXM was approved by the SBA for enrollment in the HUBZone program (*id.* ¶70); and (g) Margaux Ximenes qualified as a socially and economically disadvantaged individual (*id.* ¶62). Far from supporting Relators' theory that Defendants made false statements that they were eligible for SBA contracts when they were not, Relators' own allegations conclusively establish that Defendants *were* eligible for the contracts they procured. Where a complaint pleads facts that lead to an "obvious alternative explanation that is legal, the complaint fails to state a claim for relief." *United States v. Baylor*

*Scott & White Health*, No. 5:17-cv-886-DEA, 2019 WL 3713756, at *5 (W.D. Tex. Aug. 5, 2019) (citing *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 567-69 (2007)).

35. Relators refer to three spreadsheets attached as exhibits to the complaint that list specific "transactions." ECF Nos. 1-1, 1-2, 1-3. However, Relators do not allege, with respect to those transactions or any others, that Defendants did not render services to the Government, that Defendants did not provide goods to the Government, or that Defendants requested payment of inflated amounts from the Government. Rather, Relators generally allege that the fraud occurred during the enrollment and renewal process with the SBA. In this regard, while the exhibits may provide some specificity for certain "transactions," that specificity does not relate to the alleged fraud, but rather the *results* of such alleged fraud.

36. Moreover, even if Relators were alleging some type of fraud in those specific "transactions," they have wholly failed to do so. Noticeably missing from the spreadsheets is any particular indication as to (a) how each of the identified contracts were fraudulently procured, and (b) the legal theory behind how those transactions violate the FCA. The complaint generally alleges misrepresentations that allegedly occurred in the SBA enrollment and renewal process, but it is otherwise impossible to link each of the transactions identified in the spreadsheets to a particular fraudulent statement. The complaint raises three causes of action, but it does not link any causes of action, or legal theory, to any of the particular transactions identified in the spreadsheets. Any specificity regarding the "transactions" in the exhibits, therefore, cannot cure Relators' failure to comply with Rule 9(b) or otherwise state a valid claim for relief under the FCA.

37. Accordingly, even if the alleged misrepresentations made to the SBA as part of the enrollment or renewal process for certain SBA programs were actionable under the FCA, Defendants have wholly failed to plead such a claim with the particularity required by Rule 9(b).

## C. <u>The complaint should be dismissed with prejudice</u>

38. Should the Court dismiss the complaint, that dismissal should be with prejudice to repleading.

39. Generally, an action should not be dismissed for the failure to state a claim absent an opportunity to amend. *Hernandez v. Ikon Ofc. Solutions, Inc.*, 306 F. App'x 180, 182 (5th Cir. 2009) (per curiam). Under certain circumstances, however, this general rule does not apply, such as where the plaintiff has pleaded their "best case." *See Dark v. Potter*, 293 F. App'x 254, 257-58 (5th Cir. 2008) (per curiam) (assuming that a plaintiff asserts their "best case" where they have been apprised of the complaint's potential insufficiencies but do not take the opportunity to amend).

40. Here, all indications are that Relators have already pleaded their "best case." Relators allege that they provided the Government with "information regarding the false claims that are the subject of this complaint" in 2016. ECF No. 1 ¶16. The complaint has been on file for over three years now, and at no point have Relators ever attempted to amend it. The deadline for doing so lapsed on January 8. ECF No. 53 ¶4. Presumably, the information Relators provided to the Government is contained in the original complaint.

41. Defendants anticipate that Relators will ask the Court for the opportunity to conduct discovery for purposes of developing their factual allegations in response to this Motion. However, "the [Rule 12(c)] 'inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits.'" *Ackerson v.*

*Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (quoting *Ferrer*, 484 F.3d at 782). And precisely because only the allegations on the face of the pleadings are relevant, courts will typically deny discovery requests in response to a Rule 12(c) motion. *See id.*

42. Rule 9(b) plays a similar "gatekeeping" function to discovery. *See Grubbs*, 565 F.3d at 185. It protects FCA defendants from frivolous allegations of fraud that cause undeserved "harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discovery unknown wrongs" through "the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *Id.* at 190-191; *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." (internal quotations omitted)); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.24 (11th Cir. 2002) ("When a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and at worst, . . . baseless allegations used to extract settlements.").

43. Allowing Relators the opportunity to conduct discovery to amend their pleadings, after the pleadings are closed and the Court's deadline to amend has expired, would frustrate the gatekeeping purpose of Rule 9(b). Courts, including federal district courts in this district, have already acknowledged that Realtors are vexatious litigants and even imposed sanctions for prior

frivolous filings. The instant case is but the latest in a series of such frivolous suits and should be dismissed.[5]

## IV. CONCLUSION

44. For these reasons, the Motion should be granted and the complaint dismissed with prejudice. The Court should also allow Defendants leave to file a motion on their Section 3730(d)(4) request for attorney's fees and expenses.

45. Attached to this Motion is a proposed order granting the relief requested.

Dated: January 10, 2020.

Respectfully submitted,

**SHAW LAW PLLC**

By: _/s/ Ronald J. Shaw_
Ronald J. Shaw
State Bar No. 18152300
Email: *attorney@shawlawpllc.com*
5150 Broadway, Unit 619
San Antonio, Texas 78209
Tel: (210) 227-3737
Fax: (210) 366-0805

*Counsel for Defendants Main Building Maintenance, Inc., Elvira H. Ximenes, and Robert A. Ximenes*

---

[5] To the extent necessary under 31 U.S.C. § 3730(b)(1), Defendants request that the Attorney General consent to the requested dismissal.

**DAVIS & SANTOS, P.C.**

By: */s/ Caroline Newman Small*
Jason M. Davis
State Bar No. 00793592
Email: *jdavis@dslawpc.com*
Jay Hulings
State Bar No. 24104573
Email: *jhulings@dslawpc.com*
Caroline Newman Small
State Bar No. 24056037
Email: *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5582
Fax: (210) 200-8395

*Counsel for Defendants JXM, Inc. and Margaux I. Ximenes*

## **CERTIFICATE OF SERVICE**

      I certify that on the 10th day of January 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

                                               */s/ Caroline Newman Small*
                                               Caroline Newman Small