**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| *ex rel.* **DANIEL MONTES, JR. and** | § | |
| **ELIZABETH H. HUDSON,** | § | |
| | § | |
| **Plaintiffs-Relators,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:16-CV-00523-JKP** |
| | § | |
| **MAIN BUILDING MAINTENANCE,** | § | |
| **INC., JXM, INC., ROBERT A.** | § | |
| **XIMENES, ELVIRA H. XIMENES, and** | § | |
| **MARGAUX I. XIMENES,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE COURT:

      Defendants Main Building Maintenance, Inc. ("**MBM**"), JXM, Inc. ("**JXM**"), Robert A. Ximenes and Elvira H. Ximenes (collectively, "**Mr. and Mrs. Ximenes**"), and Margaux I. Ximenes ("**Ms. Ximenes**") (collectively, "**Defendants**") file this Motion for Judgment on the Pleadings (the "**Motion**") and would respectfully show the following:

**I. INTRODUCTION**

      1.    Relators Daniel Montes, Jr. ("**Montes**") and Elizabeth H. Hudson (collectively, "**Relators**") bring this *qui tam* action pursuant to the False Claims Act (the "**FCA**") as claimed "whistleblowers" attempting to expose alleged abuses of the Section 8(a) Business Development Program ("**Section 8(a)**") administered by the Small Business Administration (the "**SBA**").

      2.    However, this *qui tam* lawsuit was not filed by Relators as concerned citizens. Rather, this suit was merely part of an extortionist scheme to gain leverage in a Hays County

proceeding whereby Relators contested the will of Ricardo Perez Hernandez, the brother of Defendant Mrs. Elvira H. Ximenes and for whose estate Mrs. Ximenes served as executrix.

3.      Less than a year before this suit was filed in June 2016, Relator Montes attempted to "remove" the probate proceeding to the United States District Court for the Western District of Texas, where the matter was assigned to the Honorable Sam Sparks.  In his October 2015 order dismissing the case, Judge Sparks acknowledged that Montes "has been adjudicated by the state appellate courts as a '**vexatious litigant**,'" found Montes' pleadings to be "**wholly frivolous**," and **sanctioned** Montes by prohibiting him from filing suit without court approval. *See* **Ex. A** (emphasis added).

4.      This lawsuit is nothing more than a continuation of that family feud disguised as a *qui tam* action.  It is, therefore, not surprising that the Government declined to intervene.  *See* ECF No. 24.  It is also not surprising that Relators have now, for the second time, failed to properly plead their claims.  As discussed in more detail below, Defendants request that the Court dismiss the *Amended Complaint* with prejudice and permit Defendants to file a motion for attorney's fees under 31 U.S.C. § 3730(d)(4).

## II. BACKGROUND

5.      As early as October of 2003, Montes had been declared or acknowledged as a vexatious litigant by various courts in Texas, including in prior litigation with Defendants Mr. and Mrs. Ximenes and, as mentioned, by a federal judge in the Western District of Texas.  *See* **Exs. A-H**;[1] *see also In re Montes,* No. 03-15-00573-CV, 2015 WL 5514604, at *1 (Tex. App.— Austin Sept. 16, 2015, no pet.); *In re Montes*, No. 03-15-00472-CV, 2015 WL 4999117, at *1

---

[1] Any exhibits attached hereto are not offered in support of the Rule 12(c) aspect of the Motion, but rather to provide context and background and support for the dismissal being with prejudice.

(Tex. App.—Austin Aug. 18, 2015, no pet.); *In re Montes*, No. 05-08-00422-CV, 2008 WL 963174, at *1 (Tex. App.—Dallas Apr. 9, 2008, no pet.).[2]

6.      One of these proceedings was the Hays County probate proceeding involving Relators and Defendants Mr. and Mrs. Ximenes, among others, that spanned over several years and was hotly contested.  Despite a prior Hays County order declaring him a vexatious litigant, *see* Ex. B, Montes was not deterred and even went so far as to send threatening e-mails directly to Hays County judges and their staff.  *See, e.g.* **Exs. I-L**.

7.      Throughout the probate proceedings, Montes embarked on a vitriolic campaign against Defendants Mr. and Mrs. Ximenes, attempting to harass them to point that they would surrender in the litigation.  *See, e.g.,* **Exs. M- P**.

8.      In March 2016, with a hearing in the probate case approaching in April, the frequency of Montes' extortionist tactics increased to a near-daily basis, and the rhetoric in his threats became increasingly vile, often including profanity, racial epithets, threats of criminal charges, and even apparent death threats.  *See* **Exs. Q-T**.

9.      On March 13, 2016, Montes instructs John Ximenes (the son of Defendants Mr. and Mrs. Ximenes and the brother of Defendant Ms. Ximenes) to "TELL you mother now  . . . . [to] Resign as executrix.  Accept the holographic [will] to replace her fraudulent will.  Cut her losses and just walk away."  *See* **Ex. U**.  Montes warns that, unless Defendants comply with his demands in the probate proceeding, the "family is f\*\*ked."  *Id*.  Relator then threatens that if his demands are not met, he will alert the Office of the Inspector General ("**OIG**") as to Defendants' alleged abuses of the SBA.  *See id*.

---

[2] Defendants request that the Court take judicial notice of these orders and opinions.  *See* Fed. R. Evid. 201; *see also U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 688 (W.D. Tex. 2006) (taking judicial notice of certain documents in considering motion to dismiss FCA claims under Rule 12(b)(6)).

10.     The next day, on March 14, 2016,[3] Montes e-mails John Ximenes, advising that because Defendant Mrs. Ximenes did not heed his warnings to "BACKOFF" of her position in the probate proceedings, he has made good on his promise and filed a retaliatory complaint with OIG (and thus put the wheels in motion for the filing of this lawsuit):

| | |
|---|---|
| **From:** | Daniel Montes <plantoperationsdirector@gmail.com> |
| **Sent:** | Monday, March 14, 2016 9:31 PM |
| **To:** | Ronald Shaw; Elvira Ximenes; John Ximenes; glennareedcpa@satx.rr.com; John Stewart |
| **Subject:** | Investigation into Elvira H. Ximenes by the US DOD OIG. Hello. |

I filed a complaint with the US DOD OIG about my aunt and her ten plus proxy companies. If she's found guilty of fraud in the probate and criminal jury trials that she and ALL of her companies will loose their DOD contracts and be placed onto the blacklist. You know which one.

I told my aunt to BACKOFF. She wants to play with the jury. Go ahead. I will forward copies of the jury verdicts and final judgements to the government. I do this as a US taxpaying citizen. There are rules for DOD contractors that they cannot be found guilty of fraud. My aunt committed and continues to commit estate fraud in the first degree against my Grandmother and the State of Texas.

You think I'm bluffing. Shaw. You should know me by now. I'm telling you to suggest to YOUR CLIENT to resign, accept the holographic and cut her losses. Otherwise, she will be found guilty of estate fraud in the probate and criminal courts by a jury. Then, she will loose all of her existing DOD contracts and her companies to be permanently barred from doing business with the government.

I SH██ YOU NOT.

*See* **Ex. V** (emphasis and redactions added).

11.     Montes did not prevail at the April hearing. This briefly silenced his vitriolic e-mails, but shortly after the sealed *Complaint* in this case was filed months later, Montes was reinvigorated, advising the family that they had "awoken the monster" and that he had "opened the gates of hell" on them. *See* **Exs. W, X**.

12.     Given that Montes' disclosure to the Government of the allegations in this lawsuit was likely part of his multiple nefarious attempts to gain leverage in the probate proceeding, the original *Complaint*'s failure to meet the federal pleading standards—as the Court recently held upon Defendants' prior Rule 12(c) motion—is not unexpected. *See* ECF No. 67. In reaching its

---

[3] Without providing any context, Relators acknowledge in the *Complaint* and *Amended Complaint* that they first notified the Government of their allegation on March 14, 2016. *See* ECF No. 1 ¶16; ECF No. 68 ¶18.

holding, the Court agreed with Defendants that Relators' fraud-based allegations were insufficient to state a plausible claim for relief under the FCA, and Relators were thus allowed the opportunity to re-plead.  *Id.* pp. 6-7.

### III. RELATORS' AMENDED COMPLAINT

13.     While Relators have since filed an *Amended Complaint*, ECF No. 68, this pleading continues to be plagued by patent deficiencies.  The *Amended Complaint* again fails to comply with Rule 9(b), concerning the pleading of special matters like fraud, insofar as it does not state with particularity the FCA elements of (i) **scienter** as to Ms. Ximenes[4] and (ii) the **materiality** of the misrepresentations allegedly made by Defendants.

14.     Like their original pleading, a substantial portion of the *Amended Complaint* is dedicated to surveying the regulations applicable to various SBA programs in which MBM, JXM, and their joint venture (the "**Joint Venture**") are alleged to have participated, specifically, Section 8(a) and its Mentor-Protégé Program.  *See* ECF No. 68 pp. 2-3, 7-16.

15.     In terms of substantive allegations, Relators assert that Defendants obtained multiple SBA set-aside contracts by falsely certifying, for example, that JXM met the qualification requirements for Section 8(a) participation.  *See, e.g.*, *id.* pp. 23-41.

16.     One such requirement relied on by Relators concerns the ownership and control of the participating business by a socially and economically disadvantaged individual.  *Id.* pp. 7-8.  Relators allege that Mr. and Mrs. Ximenes attempted to circumvent these limitations by transferring a majority ownership interest in JXM to their daughter, Ms. Margaux I. Ximenes, and appointing her as a "figurehead" president, while continuing to exercise day-to-day management over JXM and set its strategic policy.  *See, e.g.*, *id.* pp. 16-23.  The *Amended*

---

[4] While Defendants fail to assert scienter as to all Defendants, *see infra* note 8, this motion focuses on the allegations with respect to Ms. Ximenes.

*Complaint* refers to several contracts procured by JXM through Ms. Ximenes' allegedly false certifications that she exercised actual control over the company.  *Id.* ¶94.

17.     Notably, throughout the *Amended Complaint*, Relators go out of their way to paint a picture of Ms. Ximenes' "figurehead" status.  For example, according to Relators, Ms. Ximenes only went to JXM's offices when she had to sign company papers and held no other responsibilities.  *Id.* ¶66.  Relators also raise allegations over Ms. Ximenes' supposed lack of business experience, generally, and the "running [of] a company whose primary business was supplying janitorial services[,]" specifically.  *See id.* ¶61; *see also, e.g.*, *id.* ¶¶4, 59-60, 62-63.  !

18.     Based on these allegations and others, Relators bring FCA causes of action for the following: (i) fraudulent participation in Section 8(a) by JXM and the Joint Venture pursuant to false certifications that JXM was controlled by a disadvantaged person, i.e, Ms. Ximenes; (ii) fraudulent participation in Section 8(a) by JXM and the Joint Venture pursuant to false certifications that the Joint Venture was composed of "small" businesses within the meaning of the FCA; and (iii) conspiracy to violate the FCA "by hiding each [other Defendants'] roles in the companies and in the administration of their government contracts."  *Id.* pp. 41-44.

19.     As discussed below, the Court should grant this Motion and dismiss the claims with prejudice, as Relators have already been allowed an opportunity to amend and have otherwise pleaded their "best case."  Upon dismissal, the Court should allow Defendants leave to file a motion to support their request under Section 3730(d)(4) of the FCA, which grants attorney's fees and expenses to a prevailing defendant where the FCA action, as here, was clearly frivolous or vexatious or brought primarily for purposes of harassment.[5]

---

[5]  The e-mails and court orders attached to this Motion are merely samples from a much larger universe of similar evidence of Relators' improper conduct and motivation for filing this lawsuit.

# IV. LEGAL STANDARDS

## A.  Dismissal under Rule 12(c) for the failure to state a claim

20.     Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion for judgment on the pleadings is a procedural vehicle for raising a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted.[6]  *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015) (citing Fed. R. Civ. P. 12(h)) ("[A] defense of failure to state a claim upon which relief can be granted may also be raised by a Rule 12(c) motion.").

21.     A Rule 12(c) motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008).  "Under a Rule 12(b)(6) analysis, a complaint must allege enough facts that, if taken as true, 'state a claim to relief that is plausible on its face.'"  *Hansaworld USA, Inc. v. Carpenter*, 662 F. App'x 259, 261 (5th Cir. 2016) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations and unwarranted factual inferences are not accepted as true.  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## B.  Failure to plead a fraud-based claim with particularity under Rule 9(b)

22.     A fraud-based cause of action may be dismissed on the pleadings for failure to state a claim if the alleged fraud is not pleaded with the requisite particularity.  *See Matassarin v. Grosvenor*, No. SA-13-CA-913-RP, 2015 WL 12734174, at *12 (W.D. Tex. Oct. 19, 2015) ("A dismissal for failure to state fraud with particularity is a 'dismissal on the pleadings for

---

[6] A party is not required to raise the failure-to-state-a-claim defense through a responsive pleading prior to filing a Rule 12(c) motion on that basis.  *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015); *see also Obazee v. The Bank of New York Mellon*, No. 3:15-CV-1082-D, 2015 WL 4602971, at *1 (N.D. Tex. July 31, 2015).

failure to state a claim.'" (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004))).

23.     According to Rule 9(b), "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).

24.     To satisfy Rule 9(b)'s "particularity" requirement, the complaint must set forth, at a minimum, the "who, what, when, where, and how" of the alleged fraud.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).

25.     Moreover, for purposes of pleading scienter, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)."  *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).  An inference of fraud must be supported by specific facts.  *Id.*

C.  **FCA claims and particularity requirements**

26.     It is well established that an FCA claim must meet Rule 9(b)'s pleading standard.  *See U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc*., No. SA-17-CV-1249-XR, 2019 WL 5970283, at *3 (W.D. Tex. Nov. 13, 2019) (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009)).

27.     The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented [to the United States], a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A), (B).

28.     The four elements of an FCA claim are as follows: (i) a false statement or fraudulent course of conduct; (ii) made or carried out with the requisite scienter; (iii) that was material; and (iv) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).  *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009).

29.     The FCA does not create a cause of action for all fraudulent conduct affecting the government.  *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 813 (E.D. Tex. 2008).  Rather, the focus in an FCA suit "must be on the *false claim* itself."  *Id.* (emphasis in original) ("Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation.").  Importantly, there is no liability under the FCA for any alleged underlying fraudulent activity; only for a false claim for ***payment***.  *Id.*; *see also* 31 U.S.C. § 3729(b)(2)(A) (defining "claim" as a "request or demand, whether under a contract or otherwise, for money or property").  Whether a claim for payment is "false" depends on the contract, regulation, or statute that supposedly warrants it.  *United States v. Southland Mgmt. Corp*., 326 F.3d 669, 674 (5th Cir. 2003).

30.     To satisfy Rule 9(b) in the context of the FCA, a complaint must allege either (i) the details of an actually submitted false claim or (ii) particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.  *United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2012 WL 12850250, at *3 (quoting *Grubbs*, 565 F.3d at 190) (quotations omitted); *see also Integra Med Analytics*, 2019 WL 5970283 at *3 (quoting *Grubbs*, 565 F.3d at 190) (quotations omitted).

31.     By way of indicia of actual knowledge of the FCA-violating fraud, the relator must typically provide an actual description of the fraudulent claims and the bases behind them.

9

*See United States ex. rel Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013) (per curiam).  To support allegations of false records, the relator must point to specific instances of such records or statements.  *See id.* at 895.  Either way, the relator is not absolved of the burden of sufficiently pleading the time, place, or identity details of the traditional [Rule 9(b)] standard, in order to effectuate [its] function of fair notice and protection from frivolous suits."  *Id.* (citing *Grubbs*, 565 F.3d at 190); *see also U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 688 (W.D. Tex. 2006) ("[A] complaint must specifically identify the **actual fraudulent transactions** and **the exact way in which the fraud was committed**.") (emphasis added)).

32.     In terms of scienter, the FCA generally requires conduct engaged in "knowingly." *See, e.g.*, 31 U.S.C. §§ 3729(a)(1)(A), (B).  "Though the FCA is plain that 'proof of specific intent to defraud' is not necessary, *see* [31 U.S.C. § 3729(b)(1)(B)], that *mens rea* requirement is not met by mere negligence or even gross negligence."  *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008).  The term "knowing" or "knowingly" is defined instead to mean: (i) "actual knowledge"; (ii) "deliberate ignorance of the truth or falsity of the information"; or (iii) "reckless disregard of the truth or falsity of the information[.]"  31 U.S.C. § 3729(b)(1)(A).  "Given this definition of 'knowingly,' courts have found that the mismanagement—alone—of programs that receive federal dollars is not enough to create FCA liability."  *Farmer*, 523 F.3d at 339.

33.     Notably, a defendant must have knowledge that a misrepresentation about compliance with a regulatory requirement is **material** to the government's decision to make payment on a contract.  *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989,

1996 (2016) ("What matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.").

34.    The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property, and looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.  *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 661 (5th Cir. 2017) (quoting *Escobar*, 136 S. Ct. at 2002) (quotations, brackets, and emphasis omitted).

35.    "The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force as to its 'presentment' and 'record' provisions[,]" such that "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'"  *Grubbs*, 565 F.3d at 193 (quoting *FC Inv. Group LC v. IFX Markets, Ltd.,* 529 F.3d 1087, 1097 (D.C. Cir.2008)).

36.    Conspiracy under the FCA requires a showing of the following: (i) the existence of an unlawful agreement to get a false or fraudulent claim allowed or paid by the federal government; and (ii) at least one act performed in furtherance of that agreement.  *Farmer*, 523 F.3d at 343.  The putative co-conspirators must share a specific intent to defraud the government; negligence alone is not enough.  *Id.*

## V.  ANALYSIS & ARGUMENT

## A.  The FCA claims are not pleaded with particularity

37.    The *Amended Complaint* fails to comply with Rule 9(b)'s particularity requirements.  First, Relators fail to properly allege that Ms. Ximenes had the requisite scienter in making the claimed misrepresentations.  In terms of materiality, Relators make general references to certain conditions that had to be satisfied for SBA program participation but fail to

11

allege, among other things, that the conditions in question were conditions of ***payment*** for the completed contracts.  Each of these matters is addressed in turn.

### i.  Scienter

38.     Relators' scienter allegations are deficient as pleaded against Ms. Ximenes.

39.     In this respect, the instant case is strikingly similar to *United States v. Strock*, No. 15-CV-0887-FPG, 2019 WL 4640687 (W.D.N.Y. Sept. 24, 2019), where the Government alleged that the defendants—several individuals and a construction company—misrepresented that the company qualified as a service-disabled veteran owned small business ("**SDVOSB**") to obtain set-aside construction contracts with the Department of Veterans' Affairs.  *Id.* at *1-2.

40.     An SDVOSB must be at least 51% owned by one or more service-disabled veterans, who must control day-to-day operations and make strategic and long-term policies and decisions for the company.  *Id.* at *1.  According to the Government, the main individual defendant, Lee Strock, whose own construction company had "graduated" from Section 8(a), recruited a service-disabled veteran, Terry Anderson, to form Veteran Enterprises Company, Inc. ("**VECO**").  *Id.*  Anderson was appointed as president and owned 51% owner of VECO, while Strock was appointed as vice president and owned a minority interest together with the other individual defendants.  *Id.*  The Government asserted, however, that Anderson was merely a "figurehead" for VECO, such that it was in fact Strock who ran the day-to-day and long-term business operations.  *Id.* at *1-2.  The Government also asserted that, despite his majority interest, Anderson was paid less than 5% of VECO's profits and was not the highest paid employee.  *Id.* at *2.  Moreover, Anderson supposedly did not have a key to VECO's offices, *id.* at *6, and it was alleged that his e-mail accounts were set up so that it merely appeared as if he was sending messages regarding VECO contracts, *id.* at *2.

12

41.     The defendants certified that VECO was an SDVOSB, including through online databases.  *See id.* at *2.  VECO eventually submitted bids for and was awarded SDVOSB contracts based on the certifications.  *Id.*  In submitting invoices for payment on the contracts, VECO again certified that the contracts were performed according to their terms and conditions, such as the requirement that the contracts be performed by an SDVOSB.  *Id.*

42.     In moving to dismiss the complaint, which had already been subject to an order to amend, the individual defendants argued the Government had failed to sufficiently allege they knew that any representations as to VECO's SDVOSB status were false.  *Id.* at *4-7.  The *Strock* court agreed and dismissed the case.  *Id.* at *4-7, 12.

43.     As to VECO's secretary, Kenneth Carter, the *Strock* court noted there was no allegation that Carter knew or should have known the requirements to qualify as an SDVOSB and therefore knew that any representations that VECO qualified as an SDVOSB were in fact false.  *Id.* at *5.  It was not alleged that Carter was involved in setting up VECO, other than through his financial support, nor was it alleged that he was involved in certifying VECO as an SDVOSB.  *Id.*  The only allegation regarding scienter was that Carter knew of Strock's control over VECO's business operations.  *Id.*  This allegation, however, was insufficient to establish that Carter knew or should have known that VECO must be controlled by a disabled veteran.  *Id.*  The *Strock* court also noted the Government's failure to allege that Carter knew VECO's status as a SDVOSB was material to the Government's decision to pay VECO's claims.  *Id.* at *6.

44.     For similar reasons, the allegations of knowledge against VECO's office manager, Cynthia Golde, were deemed insufficient.  *Id.* at *6-7.  The Government did allege that Golde was directed by Strock to submit an application to have VECO recognized as an SDVOSB and update the online databases accordingly.  *Id.* at *6.  But the *Strock* court deemed that this

only created an inference that Golde was "possibly familiar" with the SDVOSB qualification requirements, which fell short of an allegation of actual knowledge of the requirements or their application to VECO.  *Id.*

45.    The *Strock* court also held that the allegations against Strock himself, the putative leader of the alleged scheme, were deficient.  *Id.* at *7.  Although the Government alleged that Strock was the one who established VECO, ran the company's operations, and caused the submission of the false certifications and claims, the Government failed to allege Strock knew of the materiality of VECO's SDVOSB status to the payment of VECO's claims.  *Id.*

46.    Here, taking them as true for purposes of the applicable inquiry, Relators' allegations regarding Ms. Ximenes' knowledge of the falsity and materiality of the representations at issue are insufficient to state a claim for relief.

47.    There is no allegation in the *Amended Complaint* that Ms. Ximenes played a substantive role in establishing JXM, restructuring JXM to give herself a controlling and managing interest, or establishing the Joint Venture.

48.    While it is alleged that Ms. Ximenes was involved in making certifications to the SBA, there is no allegation that she was specifically aware of the applicable SBA program qualification requirements and, thus, that any certifications she made were in fact false.  To the contrary, according to Relators' own pleadings, Ms. Ximenes submitted applications like the initial Section 8(a) application "without conducting any investigation into the truth or accuracy of the statements [therein] . . . ."  ECF No. 68 ¶80.  Based on *Strock*, and as pleaded here, Ms. Ximenes' submission of certifications would raise, at best, only an inference that she was "possibly familiar" with the applicable program qualification requirements as opposed to actual knowledge of those requirements.  *See Strock*, 2019 WL 4640687 at *6.

49.     Relators also completely fail to allege that Ms. Ximenes knew of the materiality of her certifications regarding any claims for payment.

50.      Insofar as they contend that Ms. Ximenes should have known of the requirements and alleged falsity of the certifications, Relators plead themselves out of a claim.  They cannot "have their cake and eat it too"—simultaneously asserting that Ms. Ximenes was completely uninformed as to JXM's operations yet knowledgeable enough to have known better about the requirements of multiple, highly complex regulatory schemes.  Relators' should-have-known type allegations are simply insufficient absent any assertions of Ms. Ximenes' knowledge and experience in the industry.  *See U.S. ex rel. Schagrin v. LDR Indus., LLC*, No. 14-C-9125, 2018 WL 6064699, at *6 (N.D. Ill. Nov. 20, 2018).  To the contrary, Relators allege that Ms. Ximenes lacked any experience in business or janitorial services.  *See, e.g.*, ECF No. 68 ¶¶4, 58-61.  !

51.     If anything, Relators' allegations are indicative of ***mismanagement***, which is insufficient to give rise to liability under the FCA.  *See Farmer*, 523 F.3d at 339.  Insofar as these allegations are merely consistent with Ms. Ximenes' FCA liability, the *Amended Complaint* stops short of the line between possibility and plausibility of entitlement to relief for purposes of Rule 12.  *See United States v. Baylor Scott & White Health*, No. 5:17-CV-886-DAE, 2019 WL 3713756, at *5 (W.D. Tex. Aug. 5, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotations omitted).

52.     Moreover, as for Relators' conspiracy claim against Ms. Ximenes, this fails on the ground that a conspiracy to commit an FCA violation cannot be successfully pleaded without successfully pleading a viable underlying FCA violation.  *U.S. ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-CV-1578-O, 2012 WL 10649207, at *9 (N.D. Tex. July 11, 2012), *aff'd sub nom. U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014) (citing *U.S. ex rel. Coppock v.*

*Northrup Grumman Corp.*, No. 3:98-CV-2143, 2003 WL 21730668, at *14 n.17 (N.D. Tex. July 22, 2003)).

53.     Accordingly, Relators have failed to plead scienter with the required particularity for purposes of their claims against Ms. Ximenes.[7]

### ii.  Materiality

54.     Relators' materiality allegations are also deficient as pleaded against Defendants in general.  Materiality depends on a three-factor balancing test that examines whether: (i) the alleged violations of the FCA are conditions of payment; (ii) the Government would deny the reimbursement payments if it had known of the alleged violations; and (iii) noncompliance is minor or insubstantial.  *U.S. ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159-63 (5th Cir. 2019) (citing *Escobar*, 136 S. Ct. at 2003).

55.     First, the violation of a requirement affirmatively labelled as a condition of payment does not alone establish materiality, but it does provide probative evidence in support of the same.  *Id.* at 161.  As a general matter, "courts are careful to distinguish between conditions of program *participation* and conditions of *payment*."  *U.S. ex rel. Conner v. Salinas Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008) (emphasis in original).  Whereas "[c]onditions of participation . . . are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program[,]" any "[c]onditions of payment are those which, if the government knew they were not being followed, might cause it to actually refuse payment."  *Id.* (internal citation omitted).

56.     Second, "proof of materiality can include . . . evidence that the defendants knows that the Government consistently refuses to pay claims in the mine run of cases based on

---

[7] As set forth *infra* at note 8, Defendants further request that the claims against all Defendants be dismissed for failure to properly plead scienter.

noncompliance with the particular statutory, regulatory, or contractual requirement." *Escobar*, 136 S. Ct. at 2003. On the other hand, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* Also, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003-04.

57.    Third, whether noncompliance is minor or insubstantial depends on whether "a reasonable person would attach important to [the violation] in determining his choice of action in the transaction or if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, even though a reasonable person would not." *Lemon*, 924 F.3d at 163 (quoting *Escobar*, 136 S. Ct. at 2002-03) (internal quotations omitted).

58.    In the *Strock* case discussed above, the defendants challenged the sufficiency of the Government's allegations as to materiality, and the court agreed that those allegations were deficient. *Strock*, 2019 WL 4640687 at *9-11.

59.    As to the first materiality factor, the *Strock* court noted that although the Government alleged the payment applications submitted by VECO contained certifications that the contracts were performed in accordance with the contractual conditions, the pleadings did not indicate "whether the contract terms or the certification on the payment applications explicitly conditioned payment upon VECO's SDVOSB status." *Id.* at *9.

60.    Concerning the denial of reimbursement, the Government alleged that it regularly prosecuted parties that fraudulently obtained SDVOSB set-aside contracts, citing to several

cases. *Id.* The Government also raised allegations regarding what specific actions its contracting officers would have taken with respect to six different contracts had the officers learned that VECO did not qualify as an SDVOSB after awarding those contracts. *Id.* at *10. In deeming these allegations deficient, however, the *Strock* court noted that not all the prosecutions cited by the Government were FCA cases, and that "not every statutory or contractual violation 'gives rise to liability' under the FCA." *Id.* at *9 (quoting *Escobar*, 136 S. Ct. at 1996, 2004). The *Strock* court also took issue with the pleadings' failure to reference factors the Government might have considered to determine whether to pay VECO had it discovered it was not an SDVOSB, as well as the failure to allege that the Government would have attached importance to VECO's status. *Id.* at *11.

61.    Moreover, the Government failed to make allegations as to the substantiality of the SDVOSB-status violation or whether it went to the essence of the bargain. *Id.*

62.    Here, although the *Amended Complaint* reviews at length the ostensible conditions necessary for participating in the SBA programs at issue, not once do Relators explicitly discuss whether those conditions also constituted conditions of payment—let alone whether the Government typically denies payments on similar SBA contracts over qualification violations. Such pleading failures render it impossible to even begin with the applicable materiality analysis.

63.    Otherwise, Relators have again pleaded away their own claims, as the allegations in the *Amended Complaint* show that the Government awarded set-aside contracts, and would have paid claims on those contracts, irrespective of the qualification shortcomings alleged.

64.    According to Relators, Defendants were notified of their ineligibility for certain SBA set-aside contracts when, on September 21, 2009, "the SBA's San Antonio District Office

informed Defendants that offers the [Joint Venture] made for Section 8(a) federal contracts to provide janitorial and housekeeping services on two army bases had been disapproved because JXM's size was too large to compete for the contracts."  ECF No. 68 ¶107.  "Notwithstanding notification from the SBA that JXM and the [Joint Venture] were too large to obtain federal contracts for janitorial services," Relators continue, "Defendants were awarded at least two such contracts."  *Id.* ¶114.

65.     Assuming these allegations to be true for purposes of this Rule 12 motion, Realtors' own theory is that the Government and Defendants were aware of the size-qualification issues, but that the Government continued to pay out JXM and Joint Venture claims anyway— cutting once more against the element of materiality.  *See Smith v. Carolina Med. Ctr.*, 274 F. Supp. 3d 300, 318–19 (E.D. Pa. 2017) (noting that a complaint that alleges the government knew defendants made false certifications would negate the element of materiality).  Indeed, one cannot be influenced or induced to act by an alleged false statement when they have knowledge of the falsity.  *See Escobar*, 136 S. Ct. at 2002-03.[8]

66.     Moreover, considering Relators' failure to properly plead the materiality element of their substantive FCA claims, their conspiracy claims are also improperly pleaded.  *See Westbrook*, 2012 WL 10649207 at *9.

67.     Accordingly, Relators have failed to plead materiality with the required particularity for purposes of all their claims against Defendants.

**B.  The Amended Complaint should be dismissed with prejudice**

---

[8] Relators' allegations also foreclose the element of scienter.  FCA liability can be negated where the defendant knew that the government knew of the alleged falsity of the statements and was willing to pay anyway, *see U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 379-80 (5th Cir. 2017), which is exactly what Relators have alleged here, *see* ECF No. 68 ¶¶107, 114.

68.     Should the Court dismiss the *Amended Complaint*, that dismissal should be with prejudice to repleading.  Dismissal with prejudice is appropriate where a plaintiff failed to plead with particularity after repeated opportunities, or where the plaintiff has pleaded their "best case."  *See 7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. 3:08-CV-00140-B, 2008 WL 4951502, at *7 (N.D. Tex. Nov. 19, 2008) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)); *Dark v. Potter*, 293 F. App'x 254, 257-58 (5th Cir. 2008) (per curiam) (assuming that a plaintiff asserts their "best case" where they have been apprised of the complaint's potential insufficiencies but do not take the opportunity to amend).

69.     Here, Relators have already been given an opportunity to amend, and all indications are that they have already pleaded their "best case."  Relators allege that they provided the Government with "information regarding the false claims that are the subject of [the *Amended Complaint*]" in 2016.  ECF No. 68 ¶18.  That was over four years ago now, and the information Relators provided to the Government—which was apparently deemed insufficient to warrant an intervention—has presumably already been pleaded.[9]

## VI. CONCLUSION

70.     For these reasons, the Motion should be granted and the *Amended Complaint* dismissed with prejudice.  The Court should also allow Defendants leave to file a motion on their Section 3730(d)(4) request for attorney's fees and expenses.  Attached to this Motion is a proposed order granting the relief requested.

Dated: June 4, 2020.

---

[9] To the extent necessary under 31 U.S.C. § 3730(b)(1), Defendants request that the Attorney General consent to the requested dismissal.

Respectfully submitted,

**SHAW LAW PLLC**

By: */s/ Ronald J. Shaw*
     Ronald J. Shaw
     State Bar No. 18152300
     Email: *attorney@shawlawpllc.com*
     5150 Broadway, Unit 619
     San Antonio, Texas 78209
     Tel: (210) 227-3737
     Fax: (210) 366-0805
     ***Counsel for Defendants Main Building Maintenance, Inc., Elvira H. Ximenes, and Robert A. Ximenes***

**DAVIS & SANTOS, P.C.**

By: */s/ Caroline Newman Small*
     Jason M. Davis
     State Bar No. 00793592
     Email: *jdavis@dslawpc.com*
     Jay Hulings
     State Bar No. 24104573
     Email: *jhulings@dslawpc.com*
     Caroline Newman Small
     State Bar No. 24056037
     Email: *csmall@dslawpc.com*
     719 S. Flores Street
     San Antonio, Texas 78204
     Tel: (210) 853-5582
     Fax: (210) 200-8395
     ***Counsel for Defendants JXM, Inc. and Margaux I. Ximenes***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 4th day of June 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.


<u>*/s/ Caroline Newman Small*</u>
Caroline Newman Small