IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DANIEL MONTES, JR. and<br>ELIZABETH H. HUDSON,<br><br>Plaintiffs-Relators,<br><br>v.<br><br>MAIN BUILDING MAINTENANCE,<br>INC., JXM, INC., ROBERT A.<br>XIMENES, ELVIRA H. XIMENES,<br>and MARGAUX I. XIMENES,<br><br>Defendants. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 5:16-CV-00523-JKP |

**DEFENDANTS' REPLY TO RELATORS' OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE COURT:

Defendants Main Building Maintenance, Inc. and JXM, Inc. (together, the "**Entities**"), Robert A. Ximenes and Elvira H. Ximenes, and Margaux I. Ximenes ("**Ms. Ximenes**") (collectively, "**Defendants**") file this Reply to the Opposition by Relators to Defendants' Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "**Motion**") and would respectfully show the following:

### I. INTRODUCTION

1. Failing to sufficiently plead their claims once before, Relators have filed an *Amended Complaint* raising causes of action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "**FCA**") based on allegations that Defendants abused the Section 8(a) Business Development Program ("**Section 8(a)**") administered by the Small Business Administration (the "**SBA**"). ECF No. 68.

2. Through the Motion, Defendants seek the dismissal of the Amended Complaint with prejudice insofar as it does not state with particularity the FCA elements of (i) the **materiality** of the misrepresentations allegedly made by Defendants to participate in Section 8(a), and (ii) *scienter* as to Ms. Ximenes. ECF No. 71.

3. The Opposition raises respective arguments as to the supposed sufficiency of the materiality and scienter-related pleadings. ECF No. 75 pp. 9-20. These arguments are meritless, such that Relators generally misstate the applicable law and attempt to gap-fill allegations that should have been raised through the pleadings.

4. Alternatively, Relators request the opportunity to correct any identified deficiencies. *Id.* p. 20. Relators, however, have already pleaded their "best case"— considering that Relators amended their pleadings once before.

5. For reasons discussed below, the Motion should be granted, and the Amended Complaint should be dismissed with prejudice.[1]

---

[1] Relators comment, without seeking any specific relief, that the Motion "is better viewed as a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6)" instead of a motion under Rule 12(c) because "no answer to the Amended Complaint has been filed." ECF No. 75 p. 2 n.2. As noted through the Motion, Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). Defendants filed the Motion under Rule 12(c) out of an abundance of caution considering that the pleadings had closed under the Court's prior scheduling order. *See* ECF No. 53. Regardless, because the standard for dismissal is the same under both motions, trial courts will typically construe a premature Rule 12(c) motion as a Rule 12(b)(6) motion, *see, e.g.*, *Armatas v. Aultman Health Foundation*, No. 5:19-CV-00349, 2020 WL 2482123, at *4 (N.D. Ohio Jan. 2, 2020) (collecting cases), or proceed to the dismissal analysis where the applicable motion is otherwise unclear, *see, e.g.*, *Saenz v. JP Morgan Chase Bank, N.A.*, No. 7:13-CV-156, 2013 WL 3280214, at *1 (S.D. Tex. June 27, 2013) (holding that there was no need to "determine whether the motion to dismiss should be construed as a 12(b)(6) or a 12(c) motion" where "it [was] unclear which was the appropriate motion").

Here, the Court should proceed to a substantive analysis of the Motion because Relators have had the opportunity to fully brief the issues and have not even argued that they would be prejudiced by the same. *See Ortiz v. Holmes*, 157 F. Supp. 3d 692, 695-96 (N.D. Ohio 2016) (recognizing that a court has discretion to construe a Rule 12(c) motion as a Rule 12(b)(6) where the non-movant can point to no prejudice). To the extent necessary, Defendants request that the Court construe or treat the Motion as one brought under Rule 12(b)(6).

## II. ANALYSIS & ARGUMENT

### A. Materiality has not been sufficiently pleaded

6. Relators raise three main arguments in contending that the element of materiality is sufficiently pleaded in the Amended Complaint. *See* ECF No. 75 pp. 9-17.

7. First, Relators appear to argue that the materiality test invoked by Defendants through the Motion—which test was articulated in *U.S. ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155 (5th Cir. 2019) and derived from *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016)—does not apply to the case at hand. ECF No. 75 pp. 9-11.

8. Second, Relators assert that, even in applying the *Lemon/Escobar* test, materiality is sufficiently pleaded. *Id.* pp. 11-14.

9. Third, according to Relators, no materiality analysis is necessary with respect to Defendants' alleged misrepresentations as to the Entities' small-business status because Congress, pursuant to 15 U.S.C. § 632(w)(1), has already deemed as presumptively material any misrepresentations of business size in connection with the award of small business set-aside contracts. *Id.* pp. 15-16.

10. These arguments are discussed in turn below.

#### *i. The Lemon/Escobar materiality test*

11. Relators appear to take the position that the *Lemon/Escobar* materiality test does not apply to the case at hand. ECF No. 75 pp. 9-11.

12. Claiming that "Defendants fail to appreciate the difference between FCA cases premised on fraudulent inducement as opposed to fraudulent invoices[,]" Relators argue that the "materiality analysis in fraudulent inducement cases does not focus on the [sic] what the government did when it received invoices from the deceitful contractor, but whether the

government would have disqualified the contractor or rejected its bid had it known the truth when the misrepresentations were originally made." *Id.* p. 10.

13. The proper test for materiality, Relators continue, was articulated by the Fifth Circuit in *U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 575 F.3d 458 (5th Cir. 2009), which considers whether a false statement "has a natural tendency to influence or is capable of influencing the government's decision-making." *Id.* at 471-72 (quoting 31 U.S.C. § 3729(b)(4)) (internal quotations omitted). According to Relators, in applying this test, the *Longhi* court "declin[ed] to focus on the decision whether to pay a claim, but instead focus[ed] on the decision to enter into the proposed contract." ECF No. 75 p. 11. Relators argue that "[w]hen the focus is properly directed to whether the Defendants' misrepresentations affected the decision to contract, it is evident that Relators have sufficiently alleged materiality." *Id.*

14. However, Relators truncate the applicable analysis so much as to offer the Court a misstatement of the law.

15. In fact, *Longhi*'s "natural tendency" test, and the three-pronged *Lemon*/*Escobar* test, are one and the same.

16. Citing to *Longhi*, the Fifth Circuit in *Lemon* noted that "[u]nder the FCA, the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Lemon*, 924 F.3d at 159 (citing *Longhi*, 575 F.3d at 468) (internal quotations omitted). The Fifth Circuit then proceeded to recount the three factors the Supreme Court held in *Escobar* should be considered in determining materiality. *Id.* at 159-60 (citing *Escobar*, 136 S. Ct. at 2003).

17. For reference, the *Lemon*/*Escobar* balancing factors examine whether: (i) the alleged violations of the FCA are conditions of payment; (ii) the Government would deny the

reimbursement payments if it had known of the alleged violations; and (iii) noncompliance is minor or insubstantial. *Id.* (citing *Escobar*, 136 S. Ct. at 2003).

18.  Indeed, even before *Lemon*, in *U.S. ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645 (5th Cir. 2017), the Fifth Circuit equated *Longhi*'s natural tendency test with the three-pronged *Lemon/Escobar* analysis:

> Our approach to materiality, as stated in *Longhi*, is that "the FCA requires proof only that the defendant's false statements 'could have' influenced the government's pay decision or had the 'potential' to influence the government's decision, not that the false statements actually did so," the so-called "natural tendency test." The Supreme Court approved this standard in *Escobar*, writing that "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," and "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."

*Id.* at 661 (internal footnote citations omitted).

19.  While not dispositive of *Lemon/Escobar*'s "holistic" materiality analysis, *see id.* at 161, the analysis is nevertheless focused in no small part on issues of payment, *see Lemon*, 924 F.3d at 159-63 (citing *Escobar*, 136 S. Ct. at 2003).  And as noted above, even through *Longhi* itself, the Fifth Circuit spoke in terms of payment, holding that the FCA requires proof "that the defendant's false statements 'could have' influenced the government's *payment decision* or had the 'potential' to influence the government's decision . . . ."[2] *Longhi*, 575 F.3d at 469 (emphasis added).

20.  Moreover, to the extent that Relators attempt to differentiate this case based on the theories of FCA liability asserted, these are distinctions without a difference, as the

---

[2] To the extent that it is inconsistent with the *Escobar* and *Lemon* decisions, however, the *Longhi* opinion should be ignored by the Court here.

5

*Lemon*/*Escobar* test has been widely recognized to apply to both the false certification and fraudulent inducement theories.[3]

21. In *United States v. Strock*, No. 15-CV-0887-FPG, 2018 WL 647471 (W.D.N.Y. Jan. 31, 2018), the predecessor opinion to the main case relied on by Defendants in the Motion, the trial court recognized that *Escobar* addressed implied certification but held, based on a review of Second Circuit authority, that the materiality test applied to all the above theories of FCA liability. *Id.* at *11-12 (citing *Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 106 (2d Cir. 2017)).

22. Similarly, courts in the Fifth Circuit have held that the *Lemon*/*Escobar* materiality test applies to both implied certification and fraudulent inducement. The trial court in *U.S. ex rel. Campbell v. KIC Development, LLC,* No. EP-18-CV-193-KC, 2019 WL 6884485 (W.D. Tex. Dec. 10, 2019), a fraudulent inducement case, held that "[u]nder either an implied false certification theory or a fraudulent inducement theory, the Government must demonstrate that the fraudulent course of conduct was material to the Government's payment decision." *Id.* at *10 (citing *Longhi*, 575 F.3d at 468, 472).

23. Here, though not entirely clear, Relators seem to bring their claims under both theories of implied false certification and fraudulent inducement. What is clear, however,

---

[3] False certification comes in two sub-types, either express or implied. "While an express false certification theory of FCA liability is predicated upon outright misrepresentations made to the Government on an invoice or other claim for payment, the implied false certification theory targets fraudulent omissions from such claims." *United States ex rel. Campbell v. KIC Development, LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *7 (W.D. Tex. Dec. 10, 2019) (citing *Escobar*, 136 S. Ct. at 1999). For a fraudulent course of conduct to be actionable as an implied false certification, two requirements must be met: (i) the claim submitted to the United States must not merely request payment but also make specific representations about the goods or services provided; and (ii) failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. *Id.* (citing *Escobar*, 136 S. Ct. at 2001).

On the other hand, "unlike express or implied false certification theories, which are grounded in fraudulent misrepresentations or omissions in the invoices or claims themselves, the fraudulent inducement theory is predicated upon misrepresentations made in the underlying bids, applications, or contracts on which claims are later made." *Id.* at *9 (citing *Longhi*, 575 F.3d at 468). When a claim for payment is made on a contract procured by fraud, that claim is actionable under the FCA, although not literally false, because it derived from the original fraudulent misrepresentation. *Id.* (citing *Longhi*, 575 F.3d at 468).

regardless of the theory, is that Relators utterly fail to make allegations in the Amended Complaint that address the *Lemon*/*Escobar* factors, beginning with allegations regarding conditions of payment.

### ii. Application of the Lemon/Escobar materiality test

24. Next, Relators assert that, even if the *Lemon*/*Escobar* test applies, they have sufficiently addressed the required materiality elements. ECF No. 75 pp. 11-14.

25. Through the arguments in their Opposition, however, Relators resort to gap-filling necessary allegations, which cannot cure their pleading defects. *See EEOC v. Catastrophe Management Solutions*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (holding that "facts contained in a motion or brief 'cannot substitute for missing allegations in the complaint'" (quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990)); *see also Jones v. City of Burkburnett*, 173 F. Supp. 2d 583, 586 (N.D. Tex. 2001) (holding that allegations in a response brief cannot substitute for those that are absent from a complaint).

26. As to the first materiality factor, Relators claim that "[w]hen strict eligibility requirements must be met before the prospective contractor can even submit a bid . . . , the requirements at issue are plainly conditions of payment[,]" and "[u]nless applicants meet the minimum requirements to contract, they can never be paid." ECF No. 75 p. 12. Relators offer absolutely no authority to support this proposition, and the only thing plain is that nowhere in the Amended Complaint do Relators ever so much as refer to conditions of payment. It is too late or otherwise insufficient for Relators to make such allegations now through their briefing.

27. With respect to whether the government would have denied the reimbursement payments had it known of the supposed violations, Relators point to their allegations concerning: (i) the reasons Defendants supposedly failed to qualify for the SBA programs at issue, *id.* pp. 12-

13; (ii) Defendants' supposed attempts to cover up their non-compliance, *id.* pp. 13-14; and (iii) the SBA qualification requirements, *id.* p. 13.  In essence, Relators argue that it is sufficient to allege the manner in which Defendants supposedly violated or failed to meet specified SBA regulations required for qualification.  *See id.* ("The Amended Complaint states that had the SBA known the truth, it would have been required to deny JXM's application, '[i]t had no discretion [under its regulation].'").  However, this position utterly ignores the recognition in *Lemon*/*Escobar* that payment by the government, despite its knowledge of qualification violations, is strong evidence that the requirements are not material.  *Escobar*, 136 S. Ct. at 2003.  Nor do Relators even explicitly allege—let alone offer supporting facts—that Defendants knew the government consistently refused to pay claims based on noncompliance with the applicable requirements.[4]  *See id.*  Even if Relators' allegations in the Opposition would be otherwise sufficient, those allegations are not in the Amended Complaint and are, therefore, too little too late.

        28.     In terms of the minor or insubstantial nature of the noncompliance, Relators assert that "[e]xpress Congressional findings leave no doubt that Congress did not view these programs as routine procurement guidelines to be set aside if a better deal could be had."  ECF No. 75 p. 14.  But even through the Opposition, Relators completely ignore the "reasonable person"-type considerations articulated in *Lemon*/*Escobar* for purposes of the third materiality factor.  *See Lemon*, 924 F.3d at 163.

---

[4] Relatedly, according to Relators, "Defendants argue that Relators must affirmatively establish that the United States regularly pursues enforcement actions against companies that have misrepresented their Section 8(a) eligibility."  ECF No. 75 p. 14 n.12 (citing ECF No. 71 ¶60).  Relators actively misconstrue Defendants' briefing, as Defendants have not advocated for such a rule here.  From the context of the Motion, it is clear Defendants were merely providing background into one way in which the government attempted in the *Strock* case to establish materiality, and the court's holding that such attempt was deficient.  *See* ECF No. 71 ¶60.

*iii. Section 632(w)(1)*

29. Relators also contend that because Section 632(w)(1) renders any misrepresentation about small-business size presumptively material, then "this Court must presume that the United States was damaged when [the Entities were] awarded the small business set aside contracts identified in the Amended Complaint[,]" and "[n]o further materiality analysis is necessary . . . ." ECF No. 75 at 15-16.

30. For reference, Section 632(w)(1) provides in relevant part that—

—[i]n every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

15 U.S.C. § 632(w)(1).

31. The plain language of Section 632(w)(1) speaks of "***loss*** to the United States," i.e. damages—a concept distinct from materiality, which goes to liability. *See id.* (emphasis added); *see also A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV, 2013 WL 12065531, at *8 (S.D. Fla. June 26, 2013) (rejecting notion that Section 632(w)(1) can be used to satisfy the knowledge element of an FCA claim and recognizing that "by its terms, the statute creates a presumption of 'loss'—not liability").

32. The purpose of Section 632(w)(1)'s loss-related presumption is clear. Section 632(w)(1) bases damages on the loss of business and experience improperly shifted away from eligible small businesses, not on whether the government received the services it bargained for. *See U.S. ex rel. Savage v. Washington Closure Hanford, LLC*, No. 2:10-CV-05051-SMJ, 2017 WL 3667709, at *3-4 (E.D. Wash. Aug. 24, 2017). The statutory presumption thus avoids the problem

of a damages determination where the government receives full value from a contract that is fully performed, albeit by an entity of improper size.

33. Based on *Lemon/Escobar*, however, materiality addresses a mutually exclusive matter—influence on the government as the decision maker. *See Harman*, 872 F.3d at 661.

34. Regardless, Relators fail to offer any authority whatsoever to support the proposition that Section 632(w)(1) offers a complete end-run around the *Lemon/Escobar* analysis.

### B. Ms. Ximenes' scienter has not been sufficiently pleaded

35. Relators' arguments in the Opposition concerning the issue of Ms. Ximenes' scienter are no less clear than the related allegations in the Amended Complaint.

36. To begin, Relators concede that they did "not specifically alleg[e] that [Ms. Ximenes] was aware of the Section 8(a) qualification requirements[,]" ECF No. 75 p. 18, the necessity of which is addressed in *United States v. Strock*, No.15-CV-0887-FPG, 2019 WL 4640687, at *6 (W.D.N.Y. Sept. 24, 2019). Instead, Relators offer that Ms. Ximenes' certification of facts she knew to be untrue should somehow substitute for "allegations sufficiently alleg[ing] that she had actual knowledge that the representations at issue were false." ECF No. 75 p. 18. There is a clear distinction, however, between knowledge of regulatory qualification requirements and knowledge of the falsity of one's certifications. And making this logical leap at issue is all the more difficult considering Relators' own allegations that Ms. Ximenes was nothing more than a "figurehead" for the Entities and played no substantive part in their operations. ECF No. 68 pp. 16-23.

37. At the same time, Relators argue that Ms. Ximenes' alleged act of "[c]ertifying the truth and accuracy of information without knowing whether or not the statements were true is a textbook example of acting in reckless disregard (or deliberate ignorance) of the truth or falsity of

10

the information." ECF No. 75 pp. 18-19. Nevertheless, Defendants stand by and reiterate their contention that Relators' should-have-known type allegations, if anything, are indicative of mere mismanagement, which is insufficient to give rise to FCA liability. *See* ECF No. 71 ¶¶50-51.

38.    Relators also contend that Ms. Ximenes' knowledge of the certification requirement itself was sufficient to alert her that "the information she was going to provide would likely influence the SBA's decision to admit or maintain JXM in the Section 8(a) program." ECF No. 75 p. 19. This asserted basis for presuming Ms. Ximenes' knowledge of the materiality of the information, however, is discussed nowhere in cases like *Strock* and simply goes too far. It is also patently inconsistent with Relators' own allegations regarding Ms. Ximenes' figurehead status. Otherwise, Relators' attempts at gap-filling with arguments and presumptions raised for the first time in the Opposition are no substitute for proper pleading.

## C. **Dismissal with prejudice to re-pleading**

39.    Lastly, Relators request that they be given leave to amend should their claims be dismissed. *See* ECF No. 75 p. 20. According to Relators, "Defendants could have raised the materiality and lack of scienter defenses in their original motion [for judgment on the pleadings], and Relators then would have been able to address those asserted flaws in their Amended Complaint." *Id.*

40.    This argument is disingenuous inasmuch as Relators blame Defendants for failing to hit what amounts to a moving target.

41.    To begin, it was practically impossible for Defendants to raise the deficiencies addressed in the Motion when their allegations in the *Original Complaint* were so lacking in detail that the Court ordered Relators to amend for having failed to meet the basic Rule 9(b) standard related to the pleading of fraud. *See* ECF No. 67 pp. 6-7. Relators then re-tooled their pleadings

through the Amended Complaint, dropping certain factual allegations and contractual transactions as the bases for their claims, adding totally new allegations against Ms. Ximenes, dropping certain causes of action, and raising essentially new claims. *See* ECF No. 68. But more importantly, the burden is on Relators to properly plead their case from the first instance—and it is inappropriate for Relators to rely on Defendants to repeatedly proof their work.

42. As discussed in the Motion, dismissal with prejudice is appropriate where a plaintiff fails to plead with particularity after repeated opportunities, or where the plaintiff has pleaded their "best case." *See 7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. 3:08-CV-00140-B, 2008 WL 4951502, at *7 (N.D. Tex. Nov. 19, 2008) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)); *Dark v. Potter*, 293 F. App'x 254, 257-58 (5th Cir. 2008) (per curiam) (assuming that a plaintiff asserts their "best case" where they have been apprised of the complaint's potential insufficiencies but do not take the opportunity to amend).

43. Because all indications are that Relators' best case has already been pleaded after an opportunity to amend, this case should be dismissed with prejudice.

### III. CONCLUSION

44. For these reasons, the Motion should be granted and the Amended Complaint dismissed with prejudice.

DATED: July 7, 2020.

Respectfully submitted,

**SHAW LAW PLLC**

By: */s/ Ronald J. Shaw*
Ronald J. Shaw
State Bar No. 18152300
Email: *attorney@shawlawpllc.com*
5150 Broadway, Unit 619
San Antonio, Texas 78209
Tel: (210) 227-3737
Fax: (210) 366-0805

*Counsel for Defendants Main Building Maintenance, Inc., Elvira H. Ximenes, and Robert A. Ximenes*

**DAVIS & SANTOS, P.C.**

By: */s/ Caroline Newman Small*
Jason M. Davis
State Bar No. 00793592
Email: *jdavis@dslawpc.com*
Jay Hulings
State Bar No. 24104573
Email: *jhulings@dslawpc.com*
Caroline Newman Small
State Bar No. 24056037
Email: *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5582
Fax: (210) 200-8395

*Counsel for Defendants JXM, Inc. and Margaux I. Ximenes*

## **CERTIFICATE OF SERVICE**

      I certify that on the 7th day of July 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

                                          */s/ Caroline Newman Small*
                                          Caroline Newman Small

Case 5:16-cv-00523-JKP-RBF Document 76 Filed 07/07/20 Page 14 of 14