UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA, EX REL.; DANIEL MONTES JR., ELIZABETH H. HUDSON,**

    **Plaintiff-Relators,**

v.                                                          No. SA-16-CV-00523-JKP-RBF

**MAIN BUILDING MAINTENANCE, INC., JXM, INC., ROBERT A. XIMENES, ELVIRA A. XIMENES, MARGAUX I. XIMENES,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Defendants' Motion for Judgment on the Pleadings (ECF No. 71). Relators responded to the motion (ECF No. 75), Defendants filed a reply, and the arguments of the parties were heard at a hearing convened December 17, 2020. The motion is ripe and ready for ruling.

### I. BACKGROUND

Relators initiated this False Claims Act ("FCA") qui tam action on June 8, 2016. On March 19, 2019, the Government declined to intervene. ECF No. 24. The complaint was unsealed June 3, 2019. ECF No. 25. Defendants answered the complaint on September 16, 2019, and filed their first motion for judgment on the pleadings on January 10, 2020. ECF Nos. 39, 57. On April 9, 2020, this Court granted the motion, dismissed the complaint without prejudice, and granted Relators leave to amend. ECF No. 67. Relators timely amended their complaint. ECF No. 68.

The amended complaint brings three causes of action under the False Claims Act, 31 U.S.C. § 3729 *et seq*. *See* ECF No. 68 ("Am. Compl."), pars. 120-134. The first cause of action is a "program fraud claim" brought for violations of subsections (a)(1)(A) and (a)(1)(B). *Id.*, pars. 120-123. The second cause of action is a "false certification claim" brought for violations of subsections (a)(1)(A) and (a)(1)(B). *Id.*, pars. 124-130. The third cause of action is a "conspiracy claim" brought for violation of subsection (a)(1)(C). *Id.*, pars. 131-134.

Relators generally allege that (1) after Robert and Elvira's[1] company MBM aged out the Small Business Association's ("SBA") 8(a) Program, they secured contracts set aside for 8(a) Program participants by having their daughter Margaux fraudulently certify that JXM, a business controlled by Robert and Elvira, qualified for the 8(a) Program; and (2) Defendants falsely certified that their businesses qualified as small business and then bid and were awarded SBA set aside contracts. After an extension of time, Defendants did not answer the amended complaint but filed the subject motion. ECF Nos. 69, 71.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on 'the substance of the pleadings and any judicially noted facts.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015))). "A Rule 12(c) motion is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)." *Id.* (citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

---

[1] The Court's usual practice is to refer to parties by their surnames rather than their first names. However, because three of the individual Defendants in this case share the same surname, the Court refers to Elvira, Robert, and Margaux Ximenes by their first names.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the Court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. *Id.* Plausibility requires more than a "sheer possibility that the defendant has acted unlawfully" but does not require a "probability" that the defendant is in the wrong. *Id.* Though legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. For this reason, 'naked assertion[s]' devoid of 'further factual enhancement' and "formulaic recitation[s] of the elements of a cause of action" will not survive a motion to dismiss. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Additionally, actions brought under the FCA must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The facts of each case impacts what constitutes particularity. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). At a minimum, an FCA claim brought under § 3729(a)(1) must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)).

### III. DISCUSSION

**1. Pleading Standards**

To state a claim under the FCA, Relators must plausibly allege: "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim)." *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) *accord United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019).[2]

> The Act's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." And the Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

*United States v. Catholic Health Initiatives*, 792 F. App'x 296, 300 (5th Cir. 2019) (quoting *Escobar*, 136 S. Ct. at 1996). The Act defines "claim" to include requests for payment made directly to the United States or to an intermediary. 31 U.S.C. § 3729(b)(2).

FCA violations are alleged under theories of fraudulent inducement or false certification. Under fraudulent inducement, a relator establishes liability by showing the defendant submitted claims pursuant to a contract that was "procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves." *United States ex rel. Bettis v. Odebrecht Contrs. of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2015). *See also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542-44 (1943) (holding that contractors presented a fraudulent claim to the Government because when the initial contract was procured by fraud, all subsequent claims made under the contract were fraudulent). False certification is alleged with facts that show

---

[2] *See also United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) ("We have summarized that to state a claim under the FCA, a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government.").

4

either express misrepresentations made to the Government on a payment claim (express false certification theory) or omissions from such claims (implied false certification theory). *United States ex rel. Campbell v. Kic Dev., LLC*, No. EP-18-CV-193-KC, 2019 U.S. Dist. LEXIS 218588, at *20, 2019 WL 6884485, at *7 (W.D. Tex. Dec. 10, 2019) (citing *Escobar*, 136 S. Ct. at 1999). Liability attaches when the misrepresentation is "material to the Government's payment decision." *Escobar*, 136 S. Ct. at 2002.

**2. Factual Allegations**

Accepting the allegations in the amended complaint as true and construing them in the light most favorable to them, Relators allege Defendants secured contracts set aside for 8(a) Program (the "Program") participants and small businesses by fraudulent means.[3] For nine years, Robert and Elvira participated in the Program as legitimate participants. Am. Compl., pars. 2-3. After their business, MBM, aged out of the Program, Robert and Elvira installed Margaux as the president and CEO of a company incorporated as JXM. *Id.*, par. 4. Although Margaux held a controlling interest in the company, Margaux did not control JXM. *Id.*

On the 2001 application to the Program and in annual updates to the SBA, Margaux falsely certified that she controlled JXM. *Id.*, pars. 4, 69, 77. But Robert and Elvia "determined the strategic direction of JXM and were responsible for its day to day operations." *Id.*, par. 4. And JXM "was wholly dependent on MBM's employees and resources." *Id.* The application identified JXM's address as 421 6th Street, San Antonio, TX, but JXM and MBM were actually located at 1017 N. Main Street, San Antonio, TX from 2001 to 2004 when both companies moved to 111 E. Laurel Street, San Antonio, TX. *Id.*, pars. 66, 70. The application also stated that JXM did not use "the services or facilities of any other firm in which 'a principal' of JXM

---

[3] The SBA "aids, counsels, assists, and protects the interests of small business concerns, and advocates on their behalf within the Government." 13 CFR 101.100. The purpose of the 8(a) Program "is to assist eligible small disadvantaged business concerns compete in the American economy through business development." 13 CFR 124.1.

had a financial or other interest" but JXM used MBM's office space, computer system, and employees. *Id.*, par. 71.

While Margaux was identified as the President and sole director of JXM, her only responsibility was to sign paperwork. *Id.*, par. 67. Robert determined which contracts JXM would bid and oversaw the management of the contracts awarded. *Id.*, par. 72. Elvira controlled all financial aspects of the company including how much JXM would pay to fulfill the contracts, accounts receivable, and supply ordering. *Id.* Elvira determined compensation for JXM's officers and staff, including Margaux, and had access to JXM's bank accounts. *Id.*, pars. 72, 74. Together, Robert and Elvira provided the working capital to start JXM, responded to RFPs, and set JXM's joint venture strategy. *Id.*, pars. 72, 75.

On May 23, 2001, JXM was certified by the SBA for the Section 8(a) Program and as a Small Disadvantaged Business. *Id.*, par. 80. For the next nine years, Margaux certified annually that JXM met the eligibility requirements to participate in the Program, including the requirement that the business concern is controlled by a disadvantaged person. *Id.*, par. 88.

Robert and Elvia leveraged JXM's Program participation to execute a Mentor/Protégé Agreement (the "Agreement") between MBM and JXM. *Id.* pars. 81, 82. The Agreement allowed MBM and JXM to form a joint venture, which meant that MBM could "once again obtain access to contracts that had been set aside exclusively for 8(a) Program participants." *Id.*, par. 83. The joint venture "was awarded a number of Section 8(a) set aside contracts while JXM participated in the Program." *Id.*, par. 85. While participating in the Program, JXM or the joint venture presented claims for payment on seven set aside contracts. *Id.*, par. 94. When submitting bids for these contracts or responding to RFPs, JXM and the joint venture "expressly stated that they were eligible to bid on Section 8(a) [Program] set aside contracts." *Id.*, par. 96.

On September 21, 2009, the SBA notified JXM that it was no longer a small business for the purpose of janitorial services, NAICS code, 561720.[4] *Id.*, pars. 6, 107. After that date, JXM, MBM, and the joint venture between them continued to certify via the Online Representations and Certifications Application ("ORCA") that each was a qualifying small business. *Id.*, par. 111. A second joint venture was formed between JXM and MBM and this joint venture "made similar representations in ORCA." *Id.*, par. 115. Defendants bid on and were awarded two small business set aside contracts after receiving notice their businesses no longer qualified. *Id.*, pars. 114-115, 127.

### 3. Defendants' Grounds for Dismissal

Defendants present two arguments in support of their motion. First, that Relators fail to adequately allege that Margaux had the requisite scienter in making the claimed misrepresentations. Mot., pars. 37-38. Second, that Relators make only "general references to certain conditions that had to be satisfied for SBA program participation but fail to allege, among other things, that the conditions in question were conditions of payment for the completed contracts." *Id.* pars. 37, 54.

As to scienter, "[t]he FCA is satisfied if the [relator] alleges the defendant either knew that [its statement] was false or acted with reckless disregard of its truth or falsity." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 261 (5th Cir. 2014). "On the other hand, the statute's definition of "knowingly" excludes liability for innocent mistakes or negligence." *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 681 (5th Cir. 2003). In other words, "a lie is actionable

---

[4] "SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS)." 13 CFR 121.101.

but not an error." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

The amended complaint alleges Margaux knew the 8(a) Program application she signed contained false statements including that JXM was controlled by an economically and socially disadvantaged person and that Margaux managed the day-to-day operations and made long-term decisions for the business. The amended complaint further alleges that Margaux repeated these lies every time she certified an annual report and on bids, RFP responses, and contract documents. In short, Margaux certified that she controlled a business that she did not control and she certified that the business concern was small after receiving notice from the SBA that it was not. Thus, the amended complaint contains facts sufficient to allege scienter as to Margaux.

As to their second ground for dismissal, Defendants contend that Relators' allegations fail to show liability under a false certification theory. Specifically, that the amended complaint does not satisfy the "three-factor balancing test" expressed in *Lemon*,[5] because it does not explicitly discuss whether being controlled by a socially and economically disadvantaged person or being a small business "also constituted conditions of payment—let alone whether the Government typically denies payments on similar SBA contracts over qualification violations." Mot., pars. 54, 61.

An FCA cause of action need not allege both fraudulent inducement and false certification theories to survive a 12(b)(6) analysis. *See Scollick ex rel. United States v. Narula*, No. 14-cv-1339 (RCL), 2020 U.S. Dist. LEXIS 208604, at *31-35, 2020 WL 6544734, at *10-11 (D.D.C. Nov. 6, 2020) (concluding that "by pleading falsity under the fraud in the inducement

---

[5] The implied false certification theory can be a basis for FCA liability when a defendant (1) submits a claim for payment that makes specific representations about the goods or services provided, (2) knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement, and (3) knows that its noncompliance with that requirement is material to the government's decision to pay the defendant. *See Lemon*, 924 F.3d at 159; *Escobar*, 136 S. Ct. at 1995-96, 2001.

theory," relator's allegations against the defendants "fall outside the ambit of *Escobar*."). Here, accepting the allegations as true, as the Court must, every time Defendants bid on contracts set aside for 8(a) Program participants and submitted claims for payment on the contracts awarded, they perpetuated the fraud that induced the SBA to approve their participation in the Program. This is equally true for the lie Defendants told when they certified they were a small business and were awarded and paid on contracts set aside for eligible SBA concerns. Like the defendants in *Marcus*, the "initial fraudulent action and every step thereafter taken pressed ever to the ultimate goal -- payment of government money to persons who had caused it to be defrauded." 317 U.S. at 543-44. Thus, the Court finds that Relators plausibly allege that Defendants induced the United States to enter contracts by making false representations about JXM's eligibility to participate in the 8(a) Program and their business size. The amended complaint also demonstrates that Defendants submitted claims and received payment on said contracts.

## IV. CONCLUSION

After due consideration of the briefing and the oral arguments of the parties, the Court concludes that Relators have stated a claim under the FCA sufficient to survive Defendants' motion. Accordingly, the Court DENIES Defendants' Motion for Judgment on the Pleadings (ECF No. 71).

It is so ORDERED this 22nd day of December 2020.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE