**FILED**

OCT 1 3 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                              DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL.; DANIEL MONTES, JR., ELIZABETH H. HUDSON,<br><br>        *Plaintiffs,*<br><br>vs.<br><br>MAIN BUILDING MAINTENANCE, INC., JXM, INC., ROBERT A. XIMENES, ELVIRA H. XIMENES, MARGAUX I. XIMENES,<br><br>        *Defendants.* | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}        5-16-CV-00523-JKP-RBF |

## <u>MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBTAINING ACCESS TO COURT RECORDS WITH SUPPORTING MEMORANDUM</u>

Daniel Montes, Jr. (**"Mr. Montes"**), proceeding unrepresented, and as a US citizen taxpayer, member of the general public, and interested non party, moves to intervene in this matter for the **limited purpose** of unsealing and obtaining access to six sworn video recorded depositions and settlement agreement.  Mr. Montes thus requests this Court enter an Order granting it leave to intervene and immediately unsealing the requested discovery currently under seal, and making all such records presently available for public review.

## MEMORANDUM OF LAW

Mr. Montes, moves under Federal Rule of Civil Procedure 24(b), for the **limited purpose** of modifying the confidentiality and protective order unsealing of unfiled depositions and settlement agreement, on the grounds that the confidentiality and protective order violated the public's presumptive right of access to court records under the First Amendment.  Mr. Montes files this his motions and brief sworn under oath to the best of his personal knowledge.

Mr. Montes was the original lead relator who originally approved the blanket confidentiality and protective order (doc #52) entered on November 8th, 2019, in error, **not foreseeing** the settlement and subsequent need to unseal the unfiled depositions and settlement agreement for the public and United States Senate.  Mr. Montes objects to the entered Confidentiality and Protective Order.  Mr. Montes voluntarily dismissed out (doc #101) on March 28th, 2022.  The parties have settled with prejudice and the court set November 7th, 2022, to file a stipulation of dismissal or request an Extension.  The release of the sealed records in no way will prejudice the defs'. The requested court sealed records requested to be released

(arbitrarily and excessively designated by defs' counsel as confidential) are six video recorded depositions taken in March 2022, of Margaux I. Ximenes, Robert A. Ximenes, Pedro Morey, John P. Ximenes, in the custody of relator's counsel, and the depositions of Elizabeth H. Hudson, and Daniel Montes, Jr., in the custody of defs' counsel, and the settlement agreement ("**sealed records**").  The six video recorded depositions were taken voluntarily, sworn under oath, taken by a court approved court reporter and video technician, supported the allegations made in the amended complaint, and led to the immediate settlement between the parties and The United States of America. These sealed unfiled court records are the basis reaching the settlement agreement under seal.  The relators' second filed complaint alleges millions of US taxpayer dollars in small business set aside contracts, being diverted to the defs who were not eligible to receive them.  The public and the United States Senate **have the right to know** where their tax Dollars are being diverted to, and how much the US taxpayers and Govt are being **RIPPED OFF** via the settlement agreement.  The movant is opposed to the settlement agreement as being unfair and unreasonable to the United States. The defendants and John P.

Ximenes, continue their small business set aside contract fraud against the government regardless of settlement of this false claims case.  The public and the United States Senate has the First Amendment and common law right to access to these wrongfully sealed records since **public tax dollars are involved.** Further, Mr. Montes **has standing,** being an interested financial non party, with an executed contract to split the relator award with Mrs. Elizabeth H. Hudson, his mother.  **The United States of America** is the interested real party in this case.  Unfiled discovery such as video recorded depositions and settlement agreements under seal are court records.  Mr. Montes objects to his video deposition being wrongfully and excessively being designated confidential by Defs' counsel.

## THE FIFTH CIRCUIT
### Standard for Entering a Protective Order

The Fifth Circuit has explained: Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v.

Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); see also 8

CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND RICHARD L. MARCUS,

FEDERAL PRACTICE AND PROCEDURE § 2035, at 483-86 (2d ed. 1994).

In re Terra Int'l Inc., 134 F.3d 302, 306 (5th Cir. 1998) (per

curiam).   In another case, the Fifth Circuit noted that "[t]he

grounds for a protective order can include privileged or

work-product material, but can also include the improper sharing

of confidential information between litigants in separate

cases." Crosswhite v. Lexington Ins. Co., 321 F. App'x 365, 368

(5th Cir. 2009) (unpublished) (citing Scott v. Monsanto Co., 868

F.2d 786, 792 (5th Cir. 1989)).   A court within the Fifth

Circuit has also stated: "Good cause" exists when disclosure

will result in a clearly defined and serious injury to the party

seeking the protective order. Pansy, 23 F.3d at 786. The

litigant seeking a protective order must articulate the injury

with specificity. "Broad allegations of harm, unsubstantiated by

specific examples," do not support a showing of good cause. The

burden of justifying a protective order remains on the litigant

seeking the order. In determining good cause, the court must

balance the risk of injury without the protective order and the

requesting party's need for information. The court has wide

discretion in determining the scope of a protective order.

Blanchard & Co., Inc. v. Barrick Gold Corp., No. 02-3721, 2004

WL 737485, at *5 (E.D. 37 La. Apr. 5, 2004).

### Standard for Entering a Sealing Order

The Fifth Circuit has described the following standard for

sealing court documents: Courts have recognized that the public

has a common law right to inspect and copy judicial records.

Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.

Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978); Belo Broadcasting Corp.

v. Clark, 654 F.2d 423, 429 (5th Cir. 1981). However, the

public's common law right is not absolute. Nixon, 435 U.S. at

598, 98 S. Ct. at 1312; see Belo, 654 F.2d at 430. "Every court

has supervisory power over its own records and files, and access

has been denied where court files might have become a vehicle

for improper purposes." Nixon, 435 U.S. at 598, 98 S. Ct. at

1312. Thus, the common law merely establishes a presumption of

public access to judicial records. Littlejohn v. BIC Corp., 851

F.2d 673, 678 (3d Cir. 1988). Although the common law right of

access to judicial records is not absolute, "the district

court's discretion to seal the record of judicial proceedings is

to be exercised charily." Federal Savings & Loan Ins. Corp. v.
Blain, 808 F.2d 395, 399 (5th Cir. 1987). In exercising its
discretion to seal judicial records, the court must balance the
public's common law right of access against the interests
favoring nondisclosure. See Nixon, 435 U.S. at 599, 602, 98 S.
Ct. at 1312, 1314 (court must consider "relevant facts and
circumstances of the particular case"); Belo, 654 F.2d at 434;
see also Bank of America Nat'l Trust v. Hotel Rittenhouse, 800
F.2d 339, 344 (3d Cir. 1986) (court had duty to "balance the
factors favoring secrecy against the common law presumption of
access"); Newman v. Graddick, 696 F.2d 796, 803 (11th Cir. 1983)
("The historic presumption of access to judicial records must be
considered in the balance of competing interests." (citing
Belo)). SEC v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir.
1993) (footnote omitted). The Van Waeyenberghe court found that
the district court had abused its discretion in sealing court
documents because there was no evidence that the district court
balanced the competing interests prior to entering the sealing
order, noting that the district court had not mentioned the
presumption in favor of public access to judicial records and
had not articulated any reasons that would support sealing the

documents at issue. See id. at 848-49. The Van Waeyenberghe court distinguished between the public's right to information and the public's right to access judicial records: 38 Although the public may have a right to the information that Schwartz was enjoined, that right cannot be equated with the public's right of access to judicial records. The public's right to information does not protect the same interests that the right of access is designed to protect. "Public access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." Id. at 849 (alteration in original) (citations omitted).   The Fifth Circuit has also explained that the right of public access to judicial records applies even in cases where the information may not be of particular interest to the public. In Macias v. Aaron Rents, Inc., 288 F. App'x 913, 915 (5th Cir. 2008) (unpublished), the Fifth Circuit found that the district court had not abused its discretion by refusing to seal court documents because the concerns the party requesting sealing raised—"the lack of importance to the public and the potential for employer retaliation against litigious

employees—could apply to nearly all cases filed in the federal courts, especially those involving title VII." The court continued: "If we were to decide that the court's determination here was an abuse of discretion, then the same argument could successfully be made by countless plaintiffs. Such a result, however, would be contrary to our statement that 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" Id. (quoting Van Waeyenberghe, 990 F.2d at 848 (internal citations and quotations omitted) (emphasis added)). A district court within the Fifth Circuit has explained the standard for sealing as follows: To determine whether to disclose or seal a judicial record, the Court must balance the public's common law right of access against interests favoring non-disclosure. See S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 849 (5th Cir. 1993). "Courts have recognized that the public has a common law right to access judicial records and proceedings, although the right is not absolute." Bahwell v. Stanley-Bostitch, Inc., No. Civ.A. 00-0541, 2002 WL 1298777, at *1 (E.D. La. June 10, 2002). "Public access serves important interests, such as 'to promote trustworthiness of the judicial process, to curb judicial

abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.'" Id. (quoting Van Waeyenberghe, 990 F.2d at 849). "Accordingly, 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" Id. (quoting Van Waeyenberghe, 990 F.2d at 848). Although countervailing interests may outweigh the right of public access, the party seeking to overcome the presumption of access bears the burden of showing that 39 the interest in secrecy outweighs the presumption. Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 165 (3d Cir. 1993). The decision as to access is left to the discretion of the trial court, Nixon v. Warner Communications, Inc., 435 U.S. 589, 599, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978), but any doubt must be construed in favor of disclosure. Marcus v. St. Tammany Parish Sch. Bd., No. Civ.A. 95-3140, 1997 WL 313418, at *5 (E.D. La. June 9, 1997) (citing Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994)). Finally, that no third party objects to the sealing of the records here is "inconsequential," because the presumption of openness does not depend on such an objection. Stalnaker v. Novar Corp., 293

F. Supp. 2d 1260, 1263 (M.D. Ala. 2003); see also Citizens First

Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943,

945 (7th Cir. 1999) ("The judge is the primary representative of

the public interest in the judicial process and is duty-bound

therefore to review any request to seal the record (or part of

it) . . .[ .] [She] may not rubber stamp a stipulation to seal

the record.") (internal citations omitted). Jaufre ex rel.

Jaufre v. Taylor, 351 F. Supp. 2d 514, 516 (E.D. La. 2005)

(second alteration in original). In discussing possible

interests that might outweigh the right to public access, the

court stated that "[c]ourts have recognized that the privacy of

children may constitute a compelling interest that outweighs the

presumption in favor of public access." Id. (citations omitted).

The court also noted that "[c]ourts have also recognized,

however, that the public's interest in access to court records

'is particularly legitimate and important where, as in this

case, at least one of the parties to the action is a public

entity or official.'" Id. at 517 (citations omitted). The court

emphasized that "[w]hen courts find that a privacy interest

justifies restricting the public's access, they restrict access

in a way that will minimize the burden on the public's right,

such as by sealing or redacting only those records that contain sensitive information," id. at 517-18 (citations omitted), and that "'[a] blanket sealing order . . . would rarely, if ever, be appropriate,'" id. at 518 (additional citation omitted) (quoting T.K. & R.K. v. Waterbury Bd. of Ed., No. Civ. 303CV1747, 2003 WL 2290433, at *1 (D. Conn. Oct. 19, 2003)). The court also recognized that where the public has already had access to documents, that is a factor weighing "in favor of continued public access." Id. (citation omitted); see also Weiss v. Allstate Ins. Co., No. 06-3774, 2007 WL 2377119, at *5 (E.D. La. Aug. 16, 2007) ("[T]his Court has consistently refused to seal judicial records to which the public has already had access." (citations omitted)).

### Standard for Modifying a Protective Order

The Fifth Circuit has recognized that modification of a protective order to avoid duplicative discovery in collateral litigation should generally be permitted, but has emphasized that requests for modification should not be used simply to obtain documents that were not produced in discovery in another case because the more efficient course would be to seek 40 to compel the discovery in the collateral case. See Stack v.

Gamill, 796 F.2d 65, 68 (5th Cir. 1986) ("Discovery has already

taken place in [the collateral litigation] and the [collateral]

plaintiffs seek only to obtain documents which Tenneco allegedly

failed to produce in that case. As the district court noted,

requiring the [collateral] plaintiffs to move to compel

discovery in their own case would not cause undue wastefulness;

indeed, such a motion would be the most efficient way to obtain

the desired discovery."). In a recent district court case, the

court considered a party's request to modify a stipulated

protective order to allow discovery for collateral litigation,

and recognized several factors a court should consider in

deciding whether to grant a request for modification: Parties

may seek modification of a protective order to gain access to

previously deemed confidential materials. The Fifth Circuit has

"recognize[d] that protective order[s] should generally be

modified to allow discovery in other actions . . . ." Stack v.

Gamill, 796 F.2d 65, 68 (5th Cir. 1986). . . . . . . . . . . The

following factors should be considered in deciding whether to

modify a protective order: "(1) the nature of the protective

order, (2) the foreseeability, at the time of issuance of the

order, of the modification requested, (3) the parties' reliance on the order[,] and most significantly[,] (4) whether good cause exists for the modification." Schafer v. State Farm & Fire Cas. Co., No. 06-8262, 2009 WL 650263, at *2 (E.D. La. Mar. 11, 2009) (first alteration and first omission in original) (citations omitted); accord Raytheon Co. v. Indigo Sys. Corp., No. 4:07-cv-109, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008) (listing same four factors for consideration in deciding whether to modify a protective order at the request of a party who originally agreed to the order); Peoples v. Aldine Indep. Sch. Dist., No. 06-2818, 2008 WL 2571900, at *2 (S.D. Tex. June 19, 2008) (same); Holland v. Summit Tech., Inc., No. Civ. A. 00-2313, 2001 WL 1132030, at *2 (E.D. La. Sept. 21, 2001) (same). In considering the same four factors listed in Schafer, another court elaborated: First, the court considers the nature of the protective order. Protective orders generally may be ascribed one of three labels. Specific protective orders are the narrowest type and cover specifically identified information. Umbrella protective orders are at the other end of the spectrum and provide for the designation of all discovery as protected without any screening by either the parties or the

court. Blanket protective orders, which require the parties to designate as protected that information that each side reasonably believes to be particularly sensitive are common in litigation between direct competitors. Specific protective orders are the least susceptible to modification, umbrella protective orders are the most susceptible to modification, and blanket protective orders fall somewhere in between. Raytheon, 2008 WL 4371679, at *2 (internal citations omitted). The court noted that although "blanket orders are moderately susceptible to modification," the fact that the parties had stipulated to the protective order weighed against modification. Id. The court continued: Foreseeability in this context consists of inquiry into "whether the need for modification was foreseeable at the time the parties negotiated the original stipulated protective order." . . . . . . . . The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery. It is important that litigants can place their confidence in the integrity of protective orders so that sufficient information passes between the parties "to secure the just, speedy, and inexpensive determination," FED. R.

CIV. P. 1, of lawsuits while protecting from excess dissemination that which rightly should be. Id. at *2-3 (internal citations omitted). The court explained that if the protective order is initially entered on a showing of good cause, the party seeking modification has the burden to establish good cause for modification. See id. at *3. The good cause inquiry involves balancing the need of the party requesting modification with the opposing party's need for protection, and requires taking into account available alternatives to modification. Id. Another court explained that "'[g]ood cause' in this context requires 'changed circumstances or new situations' warranting modification of a protective order," and that "[g]ood cause includes the need to make information available for use in subsequent proceedings." Peoples, 2008 WL 2571900, at *3.   In the context of a nonparty seeking to obtain documents subject to a protective order, another district court has explained that the Fifth Circuit has rejected the strict standard applied in the Second Circuit for modifying protective orders to provide access to discovery for collateral litigation. See In re United States' Motion to Modify Sealing Orders, No. 5:03- MC-2, 2004 WL 5584146, at *3 (E.D.

Tex. June 8, 2004) (explaining that the "extraordinary

circumstances" test for modification used by the Second Circuit

in Martindell "has not prevailed in the arena of ideas," and

stating that "'[w]hatever the status of the Second Circuit

view, the prevailing approach is more flexible, calling for a

balancing test that accords substantial importance to avoiding

repetitive discovery.'" (quoting 8 CHARLES A. WRIGHT, ARTHUR

R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE §

2044.1 (2d ed. 1994))). The court found that determining which

party or non party bears the burden of showing good cause

depends on the public interest in the case: "The criterion for

modification of a protective order by a nonparty seeking to

obtain access to information of public interest is a 'good

cause' standard. When the case is of great interest to the

public and media, the courts refuse to shift the burden to the

party seeking to modify the protective order. Instead, the party

seeking to maintain confidentiality must show good cause for

continued protection." Id. at *2. The court explained the more

flexible approach adopted by the Fifth Circuit, see id. at *3

("[T]he Fifth Circuit embraces a flexible approach towards the

modification of protective orders."), and noted that the Fifth

Circuit has relied on the approach stated in Wilk v. American Medical Ass'n, 635 F.2d 1295 (7th Cir. 1980). The court stated: [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order. Motion to Modify Sealing Orders, 2004 WL 5584146, at *4 (quotation marks omitted) (quoting Wilk, 635 F.2d at 1299 (certain citations omitted)); accord Bell v. Chrysler Corp., No. 3:99-CV-0139-M, 2002 WL 172643, at *2 (N.D. Tex. Feb. 1, 2002). Another court elaborated that "[t]he clear majority of courts utilizing the test for modification of protective orders set out in Wilk have allowed liberal modification. However, in most instances where modification is allowed there has been no discovery in the collateral action and the court is thus reluctant to require wasteful and needlessly repetitive discovery." Forest Oil Corp v. Tenneco, 109 F.R.D. 321, 322 n.2 (S.D. Miss. 1985) (citing

Phillips Petroleum Co. v. Pickens, 105 F.R.D. 545, 551 (N.D. Tex. 1985)), appeal dismissed for lack of jurisdiction, Stack v. Gamill, 796 F.2d 65 (5th Cir. 1986).   Another court has explained that in cases involving a large amount of discovery, courts can enter umbrella protective orders and delay findings of good cause as to particular documents until confidentiality designations are challenged: "'[B]ecause of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause. After delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed not to be confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents.'" 43 Holland v. Summit Tech., Inc., No. Civ. A. 00-2313, 2001 WL 1132030, at *2 (E.D. La. Sept. 21, 2001) (quoting Pansy, 23 F.3d at 787 n.17).   Another court noted that "[i]t is well established that nonparties to a case seeking access to documents and records under a protective order or under seal in a civil case may do so by a motion for permissive intervention under Rule 24(b)(2)." See Newby v. Enron Corp. (In

re Enron Corp. Sec. Derivative & "ERISA" Litig.), 229 F.R.D. 126, 130 (S.D. Tex. 2005) (footnote and citations omitted). The court also noted that an intervening party must have standing. See id. The court explained that "[n]ormally the would-be intervenor must demonstrate that it has (1) an independent ground for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a question of law or fact in common with the main action," but explained that "[s]ome courts have carved out a narrow exception to the first prong where the party seeks intervention for the limited purpose of obtaining access to documents protected by a confidentiality order because the would-be intervenor is merely asking the court to exercise a power it already has, i.e., to modify the confidentiality order, and not to rule on the merits of a claim or defense." Id. (citing EEOC v. Nat'l Children's Ctr., 146 F.3d 1042, 1046, 1047 (D.C. Cir. 1998)).

### State Law

Tex. R. Civ. P. 76a (defining "court records" to include unfiled discovery "concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of

government."). See also Fla. Stat. §69.081 ("[N]o court shall enter an order or judgment which has the purpose or effect of concealing a public hazard or any information concerning a public hazard....").

### ARGUMENT

Mr. Montes has standing, the First Amendment and case law support his motions.   The **United States Senate** also has the right to the sealed records, due to their oversight responsibilities over the False Claims Act, oversight of the government, and a pending bill to amend the False Claims Act authored by Senator Chuck Grassley and in a bipartisan manner. Mr. Montes is a False Claims Act whistleblower and witness, for the United States Senate of the Judiciary.  Mr. Montes primary intent of his motions, is to supply the sealed records once released by this Court to the general public free of charge, to the United States Senate Committee of the Judiciary.  Mr. Montes has **no intention** to harass or embarrass the defs' in the public media, as defs' counsel will predictably allege in defense to maintain confidentiality.  Mr. Montes further, does not file these motions to waste court resources, in a vexatious or prejudicial manner against the defs'.  The motions by Mr. Montes

**have merit.** In the alternative, if this Court is not inclined
to release the requested sealed records to the general public,
that it makes then available to the **United States Senate
Committee of the Judiciary,** free of charge, maintaining
confidentiality. The Senate is exempt from any privilege and or
confidentiality claims by defs' counsel. Further, the US Senate
has oversight authority over the government contractor
Defendants. Defs' counsel, will continue to wave their
vexatious flag and ask for attorneys fees, instead
of supporting with case law, proof and good cause, to maintain
confidentiality of the sealed records at issue. In fact, defs'
counsel attached **24 exhibits** of emails from Mr. Montes, in
Defs' renewed motion for judgment on the pleadings as (Doc 71),
filed June 4th, 2022, that **were discussed** in the six video
recorded depositions, by extension are **clearly court records by
affiliation.** Defs' counsel will attach more exhibits of emails
from Mr. Montes which are continued unfiled discovery material,
and a letter to cease and desist, to their opposition to release
the sealed records that are clearly should be in the public
domain. Mr. Montes served the Defs' too a letter to cease and
desist for tracking his whereabouts in real time, where Mr.

Montes feared for his personal safety, since his aunt and uncle
have the means and motive.  Defs' counsel cannot pick and choose
arbitrarily to the the defs' benefit of what evidence should be
confidential or not without good cause.  The only part of any
collected unfiled evidence that should be kept under seal and
rightfully confidential are personal identifying information
such as social security numbers, bank acct numbers, bank names,
home addresses, personal phone numbers, and tax return
information.  The sealed records contain no company proprietary
secrets.  **ALL ELSE SHOULD BE MADE PUBLIC** due to the national
interest affecting the US Treasury. Mr. Montes' motions to
release the sealed records, have good cause and should be
Granted.  The unfiled discovery under seal affects the
administration of government (ie Small Business Program, US
Treasury appropriations, FCA Enforcement, etc), defs' continued
fraud against the govt is a clear and present danger and hazard
to the public.  The public has the **RIGHT** to know to the
requested sealed records.  Further, the confidentiality and
protective order is overbroad, and bypasses transparency, by
permitting parties, one side, to simply and arbitrarily

designate discovery as confidential without court review. The order should be modified or declared void in its entirety for being in violation of the First Amendment and common law.

## CONCLUSION

For the foregoing reasons, Mr. Montes respectfully requests this Court enter an Order granting it leave to intervene in this matter and providing it immediate access to the sealed records.

## REQUEST FOR HEARING

Pursuant to Local Rule, Mr. Montes requests a hearing be set for this motion. Oral argument will aid this Court in assessing any further basis to continue to keep these extremely newsworthy records secret and allow this Court to directly inquire into any defendants' justification for doing so. Mr. Montes estimates the time required for argument to be sixty (60) Minutes.

## MOTION TO FILE ELECTRONICALLY

Mr. Montes asks permission from the Court for electronic access, to file electronically as needed, to the instant motions.

RESPECTFULLY SUBMITTED,

/s/ Daniel Montes, Jr., pro se
Interested Non Party
1745 Megan (US Mailing Address)
Donna, Texas 78537
956-303-7096 US voip
ejiditarios@gmail.com

## CERTIFICATE OF CONFERENCE

I hereby certify that, on September 30th, and October 10th, 2022, via email attempted in good faith to confer with plaintiff's counsel, defs' counsel, and with counsel for the govt, as to my request to make public six sworn video recorded depositions and settlement agreement.  The def parties are opposed.  Plt's counsel and the Govt did not respond to my request to confer.  I was unable to amicably resolve my request with the parties, and request court intervention to resolve the issues.

Dated: October 10th, 2022            /s/ Daniel Montes, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10th, 2022, the foregoing document was mailed via DHL to the Clerk of the Court (since I presently don't have permission to file electronically) and all counsel of record will receive an electronic copy via the Court's CM/ECF system, and a courtesy copy via email from me.

Dated: October 10th, 2022            /s/ Daniel Montes, Jr.

October 10th, 2022

**Daniel Montes, Jr., pro se**
Interested Non Party
1745 Megan (US Mailing Address)
Donna, Texas 78537
956-303-7096 US voip
ejiditarios@gmail.com

**Clerk for the United States District Court**
U.S. District Clerk's Office
262 West Nueva Street, Room 1-400
San Antonio, Texas 78207

**GREETINGS.**

Please file the enclosed original motion and proposed order, and nothing to be mailed back.  I enclosed one copy for Judge Jason K. Pulliam, also, please foward to his chambers.
I'm proceeding pro se, and don't have permission from the court to file electronically, therefore the reason for the hardcopy filing.

If you have any questions to please feel free to email me.

Thank you,

/s/ Daniel Montes, Jr.

Cc: copies to all parties via email, today.

dhl.com

**EXPRESS EASY** **XED**

2022-10-10 MyDHL API 1.0 / "QLS certified label"

From :
DANIEL MONTES HERNANDEZ
DANIEL MONTES HERNANDEZ
71980, 3PNTE, N/A
PTO ESCON CTRO, SN PED MIX DTO 22
CALLE 3RA NORTE SN SAN PEDRO MIXTEPEC
71990 OAXACA PUERTO ESCONDIDO
MEXICO

To :
**CLERK FOR THE UNITED STATES DISTRIC**
**CLERK FOR THE UNITED STATES DISTRIC**
**262 WEST NUEVA SYTEET, N/A**
**ROM 1 – 400**
**78207 SAN ANTONIO Texas**
**UNITED STATES OF AMERICA**

**US – SAT – SAT**

Ref No: LCOCR20430
Content : DOCUMENTOS

Pce/Shpt Weight
**0.3 kg**



WAYBILL 15 1018 7571

(2L)US78207 + 60000000

Ref Code:



(J) JD01 4600 0103 7454 2740

RECEIVED
OCT 18 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

CV3

SA11
EDD: B
Commercial
151018757
PCS: 1T



**100% RECYCLABLE**